**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

BILLY SOZA WARSOLDIER,
        *Plaintiff-Appellant,*

v.

JEANNE WOODFORD, Director of the
California Department of
Corrections, in her official
capacity; JOHN LAUDEMAN, Warden
of the Adelanto Community
Correctional Facility, in his
official capacity,
        *Defendants-Appellees.*

No. 04-55879

D.C. No.
CV-04-02233-
RSWL

OPINION

Appeal from the United States District Court
for the Central District of California
Ronald S.W. Lew, District Judge, Presiding

Argued and Submitted
October 6, 2004—Pasadena, California
Submission vacated December 6, 2004
Resubmitted June 24, 2005

Filed July 29, 2005

Before: Harry Pregerson, A. Wallace Tashima, and
Richard A. Paez, Circuit Judges.

Opinion by Judge Pregerson

8775

**COUNSEL**

Audrey Huang, (Argued and Briefed), Bingham, McCutchen, Los Angeles, California; Ben Wizner (Briefed), ACLU Foundation of Southern California, Los Angeles, California, for the plaintiff-appellant.

John E. Rittmayer (Argued) and Barry G. Thorpe (Briefed), Deputy Attorney General, State of California, Los Angeles, California, for the defendants-appellees.

**OPINION**

PREGERSON, Circuit Judge:

California prisoner Billy Soza Warsoldier appeals from the district court's denial of his request for a preliminary injunction in his suit challenging a California Department of Corrections ("CDC") hair grooming policy, which requires that all male inmates maintain their hair no longer than three inches. Warsoldier refuses to adhere to the grooming policy because of his sincere religious belief that he may cut his hair only upon the death of a loved one. He argues that the policy, and CDC's refusal to permit a religious exception, violates his right to religious freedom. We have jurisdiction pursuant to 28 U.S.C. § 1292(a)(1), and for the reasons set forth below, we reverse the district court's denial of Warsoldier's request for a preliminary injunction.

**FACTUAL AND PROCEDURAL BACKGROUND**

The facts here are undisputed by the parties. Billy Soza Warsoldier is a Cahuilla Native American. He has participated in his tribe's cultural, social, and religious affairs throughout his life. One tenet of Warsoldier's religious faith teaches that hair symbolizes and embodies the knowledge a

person acquires during a lifetime and that hair may be cut only upon the death of a close relative. In keeping with his religion, Warsoldier maintains his hair long because he believes that cutting his hair would cost him his wisdom and strength. He further believes that if he were to cut his hair, he would be unable to join his ancestors in the afterlife and that instead, the deceased members of his tribe will subject him to taunting and ridicule. Except upon his father's death in 1980, Warsoldier has not cut his hair since 1971.

From April 2, 2003 to May 27, 2004, Warsoldier was an inmate at California's Adelanto Community Correctional Facility ("ACCF"), a minimum security prison located in Adelanto, California.[1] CDC's grooming policy prohibits male inmates from maintaining their hair longer than three inches. 15 Cal. Code Reg. § 3062(e). On April 24, 2003, Warsoldier was given a copy of a Rules Violation Report, which alleged that he was not in compliance with CDC's grooming policy. He received similar notices of violation on June 3 and June 16, 2003. The prison held hearings on each of the violations, during which Warsoldier pleaded not guilty and asserted that his "religious beliefs and cultural background" prevented him from complying with the grooming policy. Nevertheless, after each hearing, Warsoldier was found guilty of violating the grooming policy. For his violations of the policy, Warsoldier was punished by confinement to his cell and the imposition of additional duty hours.

On July 20, 2003, the prison's Unit Classification Committee ("UCC") designated Warsoldier a "program failure" pursuant to section 3062(m) of Title 15 of the California Code of Regulations for his refusal to cut his hair.[2] As punishment,

_____

[1] This court previously granted Warsoldier's emergency request for a preliminary injunction enjoining CDC from enforcing the grooming regulation against Warsoldier pending this appeal. We also ordered that Warsoldier be released from custody pending this appeal.

[2] Section 3062(m) defines a "program failure" as "[a]n inmate who fails to comply with these grooming standards." 15 Cal. Code Reg. § 3062(m).

Warsoldier (1) lost his assignment to particular duties; (2) lost his phone call rights; (3) was expelled from print shop and landscaping classes; (4) was removed from his position as a member of the Executive Body for the Inmate Advisory Council; (5) was prohibited from going to the main yard for recreation; (6) had his monthly draw at the prison store reduced from $180 to $45; and (7) was prohibited from making special purchases at the prison store.

After Warsoldier pursued CDC's appeal process and exhausted all of the available administrative remedies, he filed suit in United States District Court. Warsoldier's suit challenges CDC's hair grooming regulation as violating his right to religious freedom under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"). Warsoldier's complaint seeks preliminary and permanent injunctive relief prohibiting CDC from punishing him for exercising his religious beliefs and compelling CDC to lift all disciplinary sanctions that have been imposed upon him as a consequence of his refusal to adhere to the grooming policy. He also seeks a declaration that applying the policy to him violates his rights under RLUIPA.

The district court denied Warsoldier's request for a preliminary injunction, reasoning that because CDC had not forcibly cut Warsoldier's hair and had no intention of doing so before his release, it was questionable whether Warsoldier had suffered a constitutional injury. Because Warsoldier was scheduled to be released in eighteen days, the court concluded that the balance of hardships did not weigh in Warsoldier's favor and there was no need to grant a preliminary injunction.

Warsoldier appeals.

---

Such an inmate may be "subject to progressive discipline and classification committee review for appropriate housing and program placement. Physical force shall not be used to enforce compliance with these regulations, except as permitted by existing law or with a court order." *Id.*

**DISCUSSION**

## I.  Standard of Review

A district court's decision regarding preliminary injunctive relief is reviewed for an abuse of discretion. *See Pharm. Research v. Walsh*, 538 U.S. 644, 660 (2003). We must reverse the district court if it abused its discretion or based its decision on an erroneous legal standard or on clearly erroneous findings of fact.[3] *Satava v. Lowry*, 323 F.3d 805, 810 (9th Cir. 2003). Where, as here, the district court's ruling rests solely on conclusions of law and the facts are either established or undisputed, de novo review is appropriate. *See Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 964-65 (9th Cir. 2002).

## II.  Preliminary Injunctive Relief[4]

---

[3]Warsoldier argues that the district court applied an erroneous legal standard in denying him injunctive relief. Before denying the injunction, the district court remarked that

> [t]he Court has given this request for preliminary injunction great consideration and has considered all aspects of the case, and after having reviewed the papers and entertaining the oral argument, the Court makes the following ruling . . . .

According to CDC, although the district court did not explicitly state what standard it applied, it must have relied on the right legal standard because the court stated it had read Warsoldier's brief, which included the correct legal standard. We reject the suggestion that because Warsoldier included the correct standard in his brief, that the district court necessarily applied that standard in reaching its conclusion.

[4]CDC argues for the first time on appeal that the Supreme Court's decisions in *Heck v. Humphrey*, 512 U.S. 641 (1994), and *Edwards v. Balisok*, 520 U.S. 641 (1997), foreclose Warsoldier's claim for declaratory and injunctive relief. In *Heck*, the Court held that a prisoner's 42 U.S.C. § 1983 action to recover damages based on an invalid conviction or sentence may only be brought after "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into

"To obtain a preliminary injunction, [Warsoldier] must show either (1) a likelihood of success on the merits and the possibility of irreparable injury or (2) the existence of serious questions going to the merits and the balance of hardships tipping in [Warsoldier's] favor." *See Nike, Inc. v. McCarthy*, 379 F.3d 576, 580 (9th Cir. 2004) (quoting *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 422 (9th Cir. 1991)) (internal quotations omitted). "These two alternatives represent extremes of a single continuum, rather than two separate tests. Thus, the greater the relative hardship to [Warsoldier], the less probability of success must be shown." *See Walczak v. EPL Prolong, Inc.*, 198 F.3d 725, 731 (9th Cir. 1999) (internal quotations omitted).

## A. Likelihood of Success on the Merits

[1] Section 3 of RLUIPA provides, in relevant part, that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general

---

question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." 512 U.S. at 487. *Balisok* took this reasoning one step further and applied *Heck* to a prisoner's § 1983 claim for damages and declaratory relief based on the allegedly invalid procedures used to deprive him of good-time credits. 520 U.S. at 648.

Our decision, however, does not rely on CDC's denial of Warsoldier's good-time credits; *Heck* and *Balisok* therefore have no application here. Warsoldier was first notified of his extended parole date on May 11, 2004 —*after* the district court denied his motion for a preliminary injunction. Because the factual basis for CDC's *Heck* argument is undeveloped, the district court has not had the opportunity to consider the question in the first instance, and the extension of Warsoldier's incarceration is not a basis for our holding here, we decline to address CDC's argument that Warsoldier's RLUIPA claim must be brought in a habeas proceeding. CDC may raise this issue on remand to the district court should Warsoldier challenge his loss of good-time credits. We express no opinion on the merits of CDC's argument that *Heck* and *Balisok* should be extended to apply to RLUIPA claims in general or to the specific facts of this case.

applicability," *unless* the government establishes that the burden furthers "a compelling governmental interest," *and* does so by "the least restrictive means."**5** 42 U.S.C. § 2000cc-1(a)(1)-(2). RLUIPA defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." § 2000cc-5(7)(A). "A person may assert a violation of [RLUIPA] as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." § 2000cc-2(a).

The Supreme Court recently upheld RLUIPA against a challenge under the Establishment Clause. *Cutter v. Wilkinson*, 125 S.Ct. 2113 (2005). In *Cutter*, the Court found that RLUIPA's institutionalized-persons provision was compatible with the Court's Establishment Clause jurisprudence and concluded that RLUIPA "alleviates exceptional government-created burdens on private religious exercise." *Id.* at 2121. In upholding the act, the Court recognized RLUIPA "[a]s the latest of long-running congressional efforts to accord religious exercise heightened protection from government-imposed burdens," *id.* at 2117, and that Congress sought to provide inmates a mechanism to seek redress against the " 'frivolous or arbitrary' barriers [that] impeded institutionalized persons' religious exercise," *id.* at 2119; *see also id.* at 2115 (noting that RLUIPA's purpose is to "protect[ ] institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation of their religion"). Congress did this by replacing the "legitimate penological interest" standard articulated in *Turner v. Safley,* 482 U.S. 78, 89 (1987), with the "compelling governmental interest" and "least restrictive means" tests codified at 42 U.S.C. § 2000cc-1(a). *See also Cutter*, 125 S.Ct. at 2119.

---

**5**Section 3 applies when "the substantial burden [on religious exercise] is imposed in a program or activity that receives Federal financial assistance," such as the federal funds California accepts for the operation of its prisons. § 2000cc-1(b)(1). The parties do not dispute that RLUIPA applies to California prisons.

Under RLUIPA, Warsoldier bears the initial burden of going forward with evidence to demonstrate a prima facie claim that CDC's grooming policy and its punitive sanctions designed to coerce him to comply with that policy constitute a substantial burden on the exercise of his religious beliefs. *See* 42 U.S.C. § 2000cc-2(b).[6] If Warsoldier establishes the prima facie existence of such a substantial burden, on which he bears the burden of persuasion, the CDC shall bear the burden of persuasion to prove that any substantial burden on Warsoldier's exercise of his religious beliefs is *both* "in furtherance of a compelling governmental interest" *and* the "least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a); § 2000cc-2(b). By its terms, RLUIPA is to be construed broadly in favor of protecting an inmate's right to exercise his religious beliefs. 42 U.S.C. § 2000cc-3(g) ("This chapter shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution.").

*1. Substantial Burden*

CDC regulations provide that

A male inmate's hair shall not be longer than three inches and shall not extend over the eyebrows or below the top of the shirt collar while standing

---

[6]Section 2000cc-2 provides that,

If a plaintiff produces prima facie evidence to support a claim alleging a violation of the Free Exercise Clause or a violation of section 2000cc of this title, the government shall bear the burden of persuasion on any element of the claim, except that the plaintiff shall bear the burden of persuasion on whether the law (including a regulation) or government practice that is challenged by the claim substantially burdens the plaintiff's exercise of religion.

42 U.S.C. § 2000cc-2(b).

upright. Hair shall be cut around the ears, and side-burns shall be neatly trimmed, and shall not extend below the mid-point of the ear.

15 Cal. Code Reg. § 3062(e). In contrast,

A female inmate's hair may be any length but shall not extend over the eyebrows or below the bottom of the shirt collar while standing upright. If hair is long, it shall be worn up in a neat, plain style, which does not draw undue attention to the inmate.

15 Cal. Code Reg. § 3062(f). Section 3062(e) makes no exception for religious adherents whose faith prohibits them from cutting their hair. Warsoldier argues that CDC's grooming policy—in particular its failure to provide for a religious exception—imposes a substantial burden on the exercise of his religion, which prohibits him from cutting his hair.

**[2]** Although RLUIPA does not define what constitutes a "substantial burden" on religious exercise, *see* 42 U.S.C. § 2000cc-5, in the context of a land use suit brought under RLUIPA, we have explained that "for a land use regulation to impose a 'substantial burden,' it must be 'oppressive' to a 'significantly great' extent. That is, a 'substantial burden' on 'religious exercise' must impose a significantly great restriction or onus upon such exercise," *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004). In addition, the Supreme Court has found a substantial burden as "where the state . . . denies [an important benefit] because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Thomas v. Review Bd. of the Ind. Employment Sec. Div.*, 450 U.S. 707, 717-18 (1981) (ruling in First Amendment context). Although such "compulsion may be indirect, the infringement upon free exercise is nonetheless substantial." *Id*. at 718.

As a consequence of his refusal to cut his hair in violation of his religious beliefs, Warsoldier has been subjected to a series of punishments designed by CDC to coerce him into compliance. He has (1) been confined to his cell; (2) had additional duty hours imposed on him; (3) been reclassified into a workgroup where inmates do not receive time credits or as many privileges as others working in a higher work group; (4) lost his phone call privileges; (5) been expelled from print shop and landscaping classes; (6) been removed from his position as a member of the Executive Body for the Inmate Advisory Council; (7) been prohibited from going to the main yard for recreation; (8) had his monthly draw at the prison store reduced from $180 to $45; and (9) been prohibited from making special purchases at the prison store. According to CDC's statement of reasons supporting its grooming policy, such punishments are "necessary to make complying with the grooming standards more of an appealing choice to the inmate."

**[3]** Notwithstanding these assorted punishments, CDC advances the argument, accepted by the district court, that because Warsoldier has not been physically forced to cut his hair, his religious practice has not been restricted. According to CDC, even though he has been subjected to a variety of punishments for refusing to yield on his religious beliefs, Warsoldier is still "free to exercise his religion in all respects." In other words, the grooming policy is not a substantial burden because Warsoldier may practice his religion —he will just be punished for doing so in an effort to compel him to acquiesce with the grooming policy in contravention of his religious beliefs. Such an argument flies in the face of Supreme Court and Ninth Circuit precedent that clearly hold that punishments to coerce a religious adherent to forgo her or his religious beliefs is an infringement on religious exercise. *See e.g., Sherbert v. Verner*, 374 U.S. 398, 404 (1963) (reasoning that forcing someone "to choose between following the precepts of her religion and forfeiting benefits, on the one hand, and abandoning one of the precepts of her religion

in order to accept work, on the other hand . . . . puts the same kind of burden upon the free exercise of religion as would a fine imposed against appellant for her Saturday worship"); *May v. Baldwin*, 109 F.3d 557, 563 (9th Cir. 1997) (noting "that 'putting substantial pressure on an adherent to modify his behavior and to violate his beliefs' infringes on the free exercise of religion") (quoting *Thomas*, 450 U.S. at 718).

**[4]** Because the grooming policy intentionally puts significant pressure on inmates such as Warsoldier to abandon their religious beliefs by cutting their hair, CDC's grooming policy imposes a substantial burden on Warsoldier's religious practice. *See May*, 109 F.3d at 563 (finding substantial burden where prison officials conditioned receipt of benefits upon conduct—undoing of inmate's dreadlocks—that was proscribed by Rastafarian inmate's religious faith); *see also Thomas*, 450 U.S. at 717-18; *Sherbert*, 374 U.S. at 404 n.5 ("Under some circumstances, indirect 'discouragements' undoubtedly have the same coercive effect upon the exercise of First Amendment rights as imprisonment, fines, injunctions or taxes."); *Planned Parenthood v. Arizona*, 718 F.2d 938, 942 (9th Cir. 1983) ("The Supreme Court has clearly articulated that government may not restrict exercise of constitutionally protected rights, even when that restriction takes the form of withholding a benefit, rather than applying a penalty, for that exercise.").

### 2.   *Compelling State Interest*

Because we find that CDC's grooming policy imposes a substantial burden on Warsoldier's religious exercise, CDC must establish that the policy serves a compelling governmental interest. *See* 42 U.S.C. § 2000cc-1(a); 42 U.S.C. § 2000cc-2(b).

According to CDC, three compelling interests are served by its hair grooming policy. First, the hair length standards facilitate the security of prison inmates and staff by allowing the

quick and accurate identification of inmates. In addition, inmates may hide contraband or weapons in their hair or on their bodies. Absent the grooming standards, prison guards would be forced to make physical contact with an inmate to check for contraband. During such contact, prison guards risk suffering a puncture wound from sharp implements possibly concealed in the inmate's long hair. Further, such policies reduce animosity and tension by removing a method by which inmates may signal a gang affiliation. Second, because short hair is easier to keep clean, requiring that male inmates maintain short hair reduces the spread of head-borne parasites such as lice within the prison. Health and safety are also further facilitated by short hair, because it reduces the risk of injury during the inmate's use of heavy machinery. Finally, CDC argues that requiring male inmates to cut their hair ensures public safety because it "enhance[s] identification of inmates who are attempting to escape or who have escaped." In addition, requiring short hair prevents prisoners from easily disguising their identity by cutting their hair upon their escape.

In support of its argument, CDC cites three out-of-circuit cases upholding prison grooming policies as serving a compelling interest under the strict-scrutiny standard of RLUIPA's predecessor, the Religious Freedom Restoration Act ("RFRA").[7] These cases are not dispositive, however. In two of the cases the regulations were upheld against challenges brought by inmates of maximum security facilities. *See Harris v. Chapman*, 97 F.3d 499, 503-04 (11th Cir. 1996) (finding state's "compelling interest in security and order within their prisons" especially applies "in 'close custody' facilities like MCI which contain extremely violent offenders"); *Hamilton v. Schriro*, 74 F.3d 1545, 1555 (8th Cir. 1996) ("It is more than merely 'eminently reasonable' for a maximum security

---

[7]There exists little Ninth Circuit authority construing RLUIPA. Thus, the parties rely in part on cases construing its predecessor, RFRA, which the Supreme Court struck down as applied to the states in *City of Bourne v. Flores*, 521 U.S. 507 (1997).

prison to prohibit inmates from having long hair in which they could conceal contraband and weapons. It is compelling."). In contrast here, Warsoldier was incarcerated in ACCF, a minimum security facility. In the third case, *Diaz v. Collins*, the Fifth Circuit upheld a prison grooming policy requiring that male inmates maintain short hair without discussing whether any other less restrictive means that could accomplish the same compelling interest were offered by the inmate or rejected by the prison. 114 F.3d 69, 72-73 (5th Cir. 1997). But, under RLUIPA, CDC is *required* to demonstrate not only that its policy serves a compelling interest, but also that it has employed the least restrictive means to achieve that compelling interest. *See* 42 U.S.C. § 2000cc-1(a); 42 U.S.C. § 2000cc-2(b).

CDC also cites *Friedman v. Arizona*, 912 F.2d 328, 331-32 (9th Cir. 1990), in support of its argument that its stated interests are legitimate. CDC's reliance on *Friedman* is misplaced because that case was decided under the pre-RLUIPA standard articulated in *Turner*, which upheld a prison regulation impinging on inmates' constitutional rights where the regulation "is reasonably related to legitimate penological interests."[8]

---

[8]In *Henderson v. Terhune*, 379 F.3d 709 (9th Cir. 2004), we considered a similar challenge to CDC's hair length regulation brought under 42 U.S.C. § 1983. In that case, we applied *Turner* and concluded that the regulation served a legitimate penological interest and did not infringe upon the exercise of Native American religious beliefs in violation of the First Amendment. *Id.* at 712-15. The panel noted, however, that

> We express no opinion about whether the CDC's hair length regulation violates the Religious Land Use & Institutionalized Persons Act ("RLUIPA"), which provides that the government may not impose a substantial burden on an inmate's exercise of religion unless the regulation in question furthers a compelling state interest in the least restrictive manner. 42 U.S.C. § 2000cc-1(a); *Mayweathers v. Newland*, 314 F.3d 1062, 1070 (9th Cir. 2002) (upholding RLUIPA's constitutionality). Henderson brought his claim under the First Amendment, not the RLUIPA, so here we apply only *Turner*'s "reasonable relation" standard.

*Id.* at 715 n.1.

482 U.S. at 89. RLUIPA replaced *Turner*'s "legitimate penological interest" test with a "compelling government interest" test. *See* 42 U.S.C. § 2000cc-1(a). Similarly, in arguing that it has met its evidentiary burden, CDC cites cases that all predate passage of RLUIPA and involve claims subjected to the lower standard of a "legitimate penological interest" versus RLUIPA's "compelling government interest" standard. *Compare Swift v. Lewis*, 901 F.2d 730, 731 (9th Cir. 1990) (citing *Turner*, 482 U.S. at 89, and noting that "[p]rison regulations that infringe on an inmate's practice of his religion are valid if they are 'reasonably related to legitimate penological interests' "), *with* 42 U.S.C. § 2000cc-1(a) (government must establish that burden is "in furtherance of a compelling governmental interest").

Nevertheless, the question here is not whether prison security is a compelling governmental interest. It clearly is. *See Pell v. Procunier*, 417 U.S. 817, 823 (1974); *see also May*, 109 F.3d at 563 (noting that security during transfer of inmates is compelling interest). Rather, the question is whether CDC's grooming policy is the least restrictive alternative available to CDC to reach its compelling interest.

### 3. *Least Restrictive Alternative*

**[5]** Assuming that CDC has met its evidentiary burden, and that it has established that the grooming policy serves a compelling governmental interest, CDC must still establish that the grooming policy is the least restrictive alternative to achieve that interest. *See* 42 U.S.C. § 2000cc-1(a); 42 U.S.C. § 2000cc-2(b). This it has failed to do.

In attempting to meet its burden, CDC presents only conclusory statements that the hair grooming policy is the least restrictive means to ensuring prison security. First, CDC states that "[a]ll other modes of regulation would either overly burden the inmate or the penal institution, or conversely fail to meet the compelling penological interests achieved by the

grooming standards." CDC does not elaborate why this is the case or what other modes of regulation it considered and rejected. Instead, CDC relies on four out-of-circuit cases where courts upheld grooming policies as the least restrictive means. As noted above, these cases dealt with grooming standards in maximum security prisons.

[6] In contrast here, Warsoldier was placed in a minimum security prison. Inmates at facilities such as ACCF have a greater degree of freedom than inmates at higher security facilities precisely because they pose fewer security risks. ACCF inmates have less serious criminal histories, are serving minimal sentences, and are less likely to attempt to escape. Additionally, inmates in low-level security facilities may be permitted to leave the premises to work and may sleep in unlocked dorm rooms rather than locked prison cells. Given the reduced security pressures at such minimum security facilities, the least restrictive means in a maximum security prison may not be identical to what is required for a minimum security facility. CDC does not address this difference.

[7] Moreover, even outside the context of a minimum security facility, CDC cannot meet its burden to prove least restrictive means unless it demonstrates that it has actually considered and rejected the efficacy of less restrictive measures before adopting the challenged practice. *See United States v. Playboy Entm't Group, Inc.*, 529 U.S. 803, 824 (2000) (finding, in context of First Amendment challenge to speech restrictions, that "[a] court should not assume a plausible, less restrictive alternative would be ineffective"); *City of Richmond v. J.A. Croson*, 488 U.S. 469, 507 (1989) (holding that city's minority set-aside program was not narrowly tailored in part because city had not considered whether race-neutral measures would have achieved government's interest); *Hunter ex rel. Brandt v. Regents of Univ. of Cal.*, 190 F.3d 1061, 1078 (9th Cir. 1999) (concluding that government "neglected to undertake any consideration—let alone serious,

good faith consideration" of race-neutral alternatives (internal quotation marks and citation omitted)). For instance, one alternative to CDC's rigid policy would be the creation of a religious exemption to the grooming policy. Rather, CDC simply states that "[t]o meet the penological interests furthered by the grooming standard, the prison must enforce the grooming policies upon all inmates regardless of their religious convictions." It does nothing to explain why this is so or to discuss whether it has ever considered a less restrictive approach.

[8] Equally problematic for CDC is that other prison systems, including the Federal Bureau of Prisons, do not have such hair length policies or, if they do, provide religious exemptions. Prisons run by the federal government, Oregon, Colorado, and Nevada all meet the same penological goals without such a policy. Nevada permits inmates "freedom in personal grooming." Nev. Dep't of Corrections Admin. Reg. 705.01(1.1).[9] Similarly, Colorado's Department of Corrections has no hair length requirement and expressly provides for a religious exemption to its grooming regulations. Colo. Admin. Reg. 850-11(I); (IV)(A)(1)(d).[10] Oregon merely requires that an inmate's "[h]ead and facial hair . . . be maintained in a clean and neat manner." Or. Admin. R. § 291-123-0015(2)(a).[11] Nor does the federal Bureau of Prisons impose any mandatory restrictions on its inmates' hair length, regardless of the prison's security level. U.S. Dep't of Justice, Fed. Bureau of Prisons, Program Statement 5230.05 § 551.4.[12] Indeed, "[f]or more than a decade, the federal Bureau of Prisons has managed the largest correctional system in the Nation under the same heightened scrutiny standard as RLUIPA

[9]Available at http://www.doc.nv.gov.

[10]Available at http://www.doc.state.co.us/admin_reg/PDFs/0850_11.pdf.

[11]Available at http://arcweb.sos.state.or.us/rules/OARS_200/OAR_291/291_123.html.

[12]Available at http://bop.gov/DataSource/execute/dsPolicyLoc.

without compromising prison security, public safety, or the constitutional rights of other prisoners." *Cutter*, 125 S.Ct. at 2124 (quoting Brief for United States at 24).

Surely these other state and federal prison systems have the same compelling interest in maintaining prison security, ensuring public safety, and protecting inmate health as CDC. Nevertheless, CDC offers no explanation why these prison systems are able to meet their indistinguishable interests without infringing on their inmates' right to freely exercise their religious beliefs. Instead, CDC argues that its prisons should not be hindered in addressing its compelling interests just because other jurisdictions have adopted policies that do not substantially burden inmates' religious practices.

Contrary to CDC's argument, we have found comparisons between institutions analytically useful when considering whether the government is employing the least restrictive means. Indeed, the failure of a defendant to explain why another institution with the same compelling interests was able to accommodate the same religious practices may constitute a failure to establish that the defendant was using the least restrictive means. *See Cheema v. Thompson*, 67 F.3d 883, 885 n.3 (9th Cir. 1995) (finding fault with defendant's failure to explain fact that another school district had managed to accommodate Sikh students' religious practices without sacrificing school safety). Furthermore, "[w]here a prisoner challenges the[ prison's] justifications, prison officials *must* set forth detailed evidence, tailored to the situation before the court, that identifies the failings in the alternatives advanced by the prisoner." *May*, 109 F.3d at 564-65 (emphasis added).

[9] CDC also fails to explain why its women's prisons do not adhere to an equally strict grooming policy even in maximum security facilities. In contrast to the men's grooming policy at issue here, CDC regulations provide that

> A female inmate's hair may be any length but shall not extend over the eyebrows or below the bottom of the shirt collar while standing upright. If hair is long, it shall be worn up in a neat, plain style, which does not draw undue attention to the inmate.

15 Cal. Code Reg. § 3062(f). As Warsoldier points out, the government's interest in inmate health and security is no less compelling when the inmate is female rather than male. Concerns about inmate identification, lice infestation, and the ease with which an escaped inmate may alter her or his appearance are the same regardless of the sex of the offender. That CDC's compelling interests apply equally to male and female inmates suggests that there is no particular health or security concern justifying the policy, and, more importantly, that the hair length restriction is not the least restrictive means to achieve the same compelling interests.

Challenging this comparison, CDC argues that the difference in treatment between male and female inmates is justified because women inmates are "much less likely" to commit violent crimes than male inmates and, hence, that women inmates pose a lesser security concern. However, the evidence cited by CDC does not clearly bear this out. According to CDC's data, female inmates commit assaults and/or batteries at a rate of 3.2 per 100 inmates. In comparison, male inmates commit 4.7 assaults and/or batteries per 100 inmates. A difference of 1.5 percent hardly suggests that female inmates are "*much* less likely" to commit assaults than male inmates. Furthermore, the data cited by CDC does not indicate whether it is based on California's entire prison population, which would include maximum security facilities, or is limited to minimum security facilities like ACCF. Warsoldier was incarcerated at a minimum security facility, which is likely to have significantly different security needs than a maximum security facility.[13]

---

[13]Equally misplaced is CDC's reliance on out-of-circuit equal protection cases approving differential treatment between male and female prisoners

CDC makes no attempt to explain why prisons in other jurisdictions and its own women's prisons are able to meet the same compelling interests of prison safety and security without requiring short hair or permitting a religious exemption. Instead, CDC insists that this court must completely defer to CDC's judgment. CDC's insistence, however, is insufficient to meet its burden of proof under § 2000cc-2(b). *See May*, 109 F.3d at 564-65 ("Our holding should not suggest that prison officials can satisfy the demands of RFRA with mere assertions of unfulfilled security objectives.").

### 4. Conclusion

**[10]** Based on the above, we find that Warsoldier has demonstrated a likelihood that he will prevail on the merits. While we recognize that CDC's interest in maintaining prison security is compelling, CDC's conclusory statements are insufficient to meet its burden that it has adopted the least restrictive means to achieve that interest. At a minimum, there exists serious questions going to the merits of Warsoldier's claim.

### B. Possibility of Irreparable Injury

For the same reasons the grooming policy constitutes a substantial burden on Warsoldier's religious practice, we conclude that Warsoldier faces the possibility of irreparable injury absent an injunction barring enforcement of the grooming policy. Because his religion forbids him from cutting his hair, CDC's grooming policy and its continual punishment of Warsoldier's noncompliance with that policy forces Warsol-

---

vis-a-vis grooming standards. The cases cited all involve equal protection claims by male prisoners that were subject to rational basis analysis or intermediate scrutiny analysis. *See Dreibelbis v. Marks*, 742 F.2d 792, 795-96 (3d Cir. 1984); *Deblasio v. Johnson*, 128 F. Supp. 2d 315, 328 (E.D. Va. 2000); and *Davie v. Wingard,* 958 F. Supp. 1244, 1252-53 (S.D. Ohio 1997). In contrast, under RLUIPA, CDC's regulations must survive strict scrutiny analysis. 42 U.S.C. § 2000cc-1(a).

dier to choose between following his religious beliefs and suffering continual punishment, and abandoning his religious beliefs to avoid such punishment. We have previously held that " 'putting substantial pressure on an adherent to modify his behavior and to violate his beliefs' infringes on the free exercise of religion." *May*, 109 F.3d at 563 (quoting *Thomas*, 450 U.S. at 718); *see also Sherbert*, 374 U.S. at 404 (noting that forcing someone "to choose between following the precepts of her religion and forfeiting benefits, on the one hand, and abandoning one of the precepts of her religion in order to accept work, on the other hand. . . . puts the same kind of burden upon the free exercise of religion as would a fine imposed against appellant for her Saturday worship").

**[11]** Finally, "[u]nder the law of this circuit, a party seeking preliminary injunctive relief in a First Amendment context can establish irreparable injury sufficient to merit the grant of relief by demonstrating the existence of a colorable First Amendment claim." *See Sammartano*, 303 F.3d at 973-74 (internal citations omitted); *see also* 11A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 2948.1 (2d ed. 2004) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary."). Because Warsoldier has, at a minimum, raised a colorable claim that the exercise of his religious beliefs has been infringed, he has sufficiently established that he will suffer an irreparable injury absent an injunction barring enforcement of the grooming policy against him.

## C. *Balance of Hardships*

**[12]** Contrary to the district court's conclusion, the fact that Warsoldier was due to be released in eighteen days does not mean that the balance of hardships weigh against him: "[T]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury" for purposes of the issuance of a preliminary injunction. *Elrod v.*

*Burns*, 427 U.S. 347, 373 (1976). Rather, this case raises serious First Amendment questions and compels a finding that the potential for irreparable injury exists, or at the very least, that "the balance of hardships tips sharply in [Warsoldier's] favor." *See Sammartano*, 303 F.3d at 973 (internal citations and quotations omitted).

[13] Balanced against the irreparable injury faced by Warsoldier is CDC's compelling interest in maintaining prison security, health, and hygiene. In considering which way the balance tilts, it is important to note that, unlike the cases cited by CDC, which involved maximum security prisons, ACCF is a minimum security prison. Based on these facts, we find that the balance of hardships here tilt in Warsoldier's favor, and thus, that the district court erred in denying him preliminary injunctive relief. *See Elrod*, 427 U.S. at 373-74 (holding that when the loss of First Amendment freedoms "[i]s both threatened and occurring at the time of [plaintiff's] motion and [if] [plaintiff] sufficiently demonstrated a probability of success on the merits, the Court of Appeals might properly have held that the District Court abused its discretion in denying preliminary injunctive relief").

## CONCLUSION

[14] RLUIPA requires that CDC use the least restrictive means necessary to achieve its compelling interest in prison safety and security. 42 U.S.C. § 2000cc-1(a); *see Cutter*, 125 S.Ct. at 2119. The policy at issue here is sweeping: it applies to all male inmates, but to no female inmates regardless of a female inmate's security threat; it does nothing to distinguish between inmates housed at maximum security facilities and those low level offenders in minimum security institutions; and it provides absolutely no accommodation for religious belief. Yet, CDC has utterly failed to demonstrate that the disputed grooming policy is the least restrictive means necessary to ensure prison safety and security. Because Warsoldier has established a likelihood of success on the merits and the pos-

sibility that the grooming policy will cause him to suffer an irreparable injury, the district court's denial of his request for a preliminary injunction prohibiting CDC from enforcing its hair grooming policy is **REVERSED** and the cause is **REMANDED** to the district court for further proceedings not inconsistent with this opinion. Our previous injunction enjoining CDC from enforcing the grooming regulation against Warsoldier and releasing Warsoldier from custody pending this appeal shall remain in place pending entry of a final judgment in the district court.