James SHILLING, Plaintiff,

v.

Jackie CRAWFORD, James Schomig, Charles McBurney, William Kukoloia, Martha Sims, Cheryl Burson, Clarence King, Dave Casaleggio, Gary Friedman, Harold Clarke, Joseph Lehman, James Thatcher, Dean Mason, David Bailey, James Miller, and Ethan Earley, Defendants.

No. 2:05–CV–00889–PMP–GWF.

United States District Court,
D. Nevada.

March 12, 2008.

James Shilling, Monroe, WA, pro se.

Sara J. Olson, State of Washington Office of the Attorney General, Olympia, WA, for David Bailey, Richard Clarke, Ethan Earley, Joseph Lehman, Dean Mason, James Miller and James Thatcher.

Jill Carol Davis, Attorney General's Office, Las Vegas, NV, for C. Burson, Dave Casaleggio, Jackie Crawford, Clarence King, William Kuloloia, Charles McBurney, James Schomig and Martha Sims.

## ORDER

PHILIP M. PRO, District Judge.

Presently before the Court are State of Nevada Defendants' Motion for Summary Judgment (Doc. # 187) and Washington DOC Defendants' Motion for Summary Judgment on Plaintiff's RLUIPA Claim and Memorandum in Support Thereof (Doc. # 186), both filed on October 11, 2007. Plaintiff filed a Response (Doc. # 195) on November 19, 2007. Washing-

ton DOC Defendants filed a Reply (Doc. # 194) on Nov. 19, 2007.

## I. BACKGROUND

On May 13, 2003, the Washington Department of Corrections ("Washington DOC") and Nevada Department of Corrections ("Nevada DOC") entered a contract ("Housing Contract") wherein Nevada DOC agreed to house Washington inmates at its facilities. (Washington DOC Defs.' Mot. for Summ. J., "Wash. Defs.' First Mot." [Doc. # 144], Ex. 2, Attach. A.) Plaintiff James Shilling is a Washington State prisoner currently housed in the Washington State Reformatory in Monroe, Washington. (*Id.*, Ex. 1, Attach. A; Shilling Decl.) On May 17, 2003, Plaintiff was transferred to High Desert State Prison ("HDSP") in Indian Springs, Nevada under the Housing Contract's terms. (Wash. Defs.' First Mot., Ex. 1, Attach. A.) Plaintiff was transferred back to Washington in November 2004.(*Id.*)

Under Washington DOC policy, inmates housed in Washington facilities who want to receive religious accommodations, including religious diets, must fill out a religious preference form and a religious diet request form and submit the forms to the prison chaplain. (*Id.*, Ex. 6, Attach.A.) On February 18, 1993, Plaintiff completed and submitted a religious preference form, marking his religious preferences as Catholic and Protestant. (*Id.*, Ex. 7, Attach.A.) On May 9, 1993, Plaintiff completed and submitted another religious preference form indicating his religious preference was Lutheran. (*Id.*, Attach.B.) On April 11, 1997, Plaintiff filled out another religious preference form stating that his religious preference was Buddhist. (*Id.*, Attach.C.) Washington DOC Defendants state this was the last religious preference form Plaintiff submitted prior to his transfer to HDSP in 2003. (Wash. Defs.' First Mot. at 4.) Plaintiff's exhibits, however, contain a copy of a religious preference

form bearing a date of July 17, 1997, wherein Plaintiff indicated his religious preference was Judaism. (Shilling Decl. and Exs. attached thereto, Ex. 58.) Nowhere on Plaintiff's form, however, did Plaintiff request a religious diet. (*Id.*) Upon transferring back to Washington in November 2004, Plaintiff completed another religious preference form declaring himself an Orthodox Jew. (Wash. Defs.' First Mot., Ex. 7, Attach D.)

Shortly after Plaintiff arrived at HDSP in May 2003, he completed two Inmate Request Forms directed to the HDSP Chaplain and Kitchen Supervisor requesting a kosher diet. (Shilling Decl. and Exs. attached thereto, Ex. 22.) The record contains no evidence the chaplain or kitchen services supervisor answered Plaintiff's request. Plaintiff did not file another request or grievance until November 20, 2003, when he directed another Inmate Request form to the "Jewish Chaplain" seeking a kosher diet. (*Id.*) On December 12, 2003, Plaintiff filled out another Inmate Request form addressed to the Inmate Kitchen Supervisor requesting a kosher diet and requesting a response. (*Id.*)

On December 22, 2003, Plaintiff submitted an informal grievance stating he was being denied kosher food consistent with his Jewish beliefs and practices. (*Id.*, Ex. 12.) On or about December 30, 2003, Defendant Dave Casaleggio ("Casaleggio"), the HDSP Prison Chaplain, interviewed Plaintiff to discuss Plaintiff's request for a religious diet. (Nevada Defs.' Mot. for Summ. J., "Nev. Defs.' First Mot." [Doc. # 145], Ex. C, Aff. of Father Dave Casaleggio.)

Nevada DOC procedures regarding religious diet participation provide that the chaplain must evaluate whether an inmate is eligible for a religious diet by considering a "hereditary or social connection to the religious practice, or substantial philo-

sophical understanding of the religion and its dietary practices." (Shilling Decl. and Exs. attached thereto, Ex. 21–C at 2.) Nevada DOC procedures regarding inmates' access to religious programs further provide that "[s]ome religions or Faith Groups require proof of ethnicity, parentage, conversion, or membership before an inmate is recognized by the church authority. Inmates who cannot produce the required proof will not be permitted to participate in holiday or Holy Day events or special meals of that religion or Faith Group." (*Id.*, Ex. 21–B at 2.)

Under these procedures, as chaplain, Casaleggio is responsible for interviewing inmates who request religious diets to determine if they qualify for such diets. (Nevada Defs.' Mot. for Summ. J., Ex. C, Aff. of Father Dave Casaleggio.) During the interview, Casaleggio asks the inmate about his religious history and current religious beliefs and practices and makes a determination as to whether the inmate is entitled to a religious diet based on the inmate's responses. (*Id.*) Casaleggio initially approved Plaintiff to receive a religious diet and prepared a memorandum to the Culinary Food Manager notifying him of Plaintiff's dietary request. (*Id.;* Nev. Defs.' First Mot., Ex. D.)

However, to understand the requirements of the Orthodox Jewish faith, Casaleggio contacted Defendant Gary Friedman ("Friedman"), President of Pidyon Shevuyim, N.A., who contracted with Washington DOC to provide Jewish services to inmates housed in Washington. (Nev. Defs.' First Mot., Ex. C, Aff. of Father Dave Casaleggio; *see also* Mot. to Dismiss by Def. Gary Friedman [Doc. # 27], Decl. of Gary Friedman.) After learning more about the Orthodox Jewish faith and its membership requirements, Casaleggio conducted a second interview with Plaintiff during which he learned that Plaintiff was not born of a Jewish mother and had neither initiated nor completed the conversion process to become an Orthodox Jew. (Nevada Defs.' First Mot., Ex. C, Aff. of Father Dave Casaleggio.) Consequently, Casaleggio withdrew his approval for Plaintiff's kosher diet. (*Id.*)

On February 19, 2004, Plaintiff received a response to his informal grievance, signed by caseworker Defendant Cheryl Burson and grievance coordinator Defendant Martha Sims stating that Plaintiff's request for a religious diet was "passed on to the culinary food manager" and therefore the grievance was "resolved." (Shilling Decl. and Exs. attached thereto, Ex. 12.) That same day, Plaintiff appealed the informal grievance response and filed a First Level Grievance claiming that he still was not receiving a kosher diet consistent with his religious beliefs. (*Id.*) On April 13, 2004, Plaintiff received a response to his First Level Grievance explaining that HDSP does not offer kosher diets, but that Ely State Prison ("ESP") provides kosher diets to inmates. (*Id.*) That same day, Plaintiff appealed the First Level Grievance and filed a Second Level Grievance arguing that as a "Receiving Institution," HDSP should provide religious meals to offenders requiring such meals under their religious practices and beliefs. (*Id.*) In response to Plaintiff's Second Level Grievance, Plaintiff was told that he had been submitted to ESP for a transfer to accommodate his request for a kosher diet. (*Id.*) According to Plaintiff, ESP is a higher security facility than HDSP. (Nev. Defs.' First Mot., Ex. A, Shilling Dep. at 44.)

On or about April 4, 2004, Washington DOC Defendants Ethan Earley ("Earley") and James Miller ("Miller") were informed Plaintiff was an Orthodox Jew requesting a kosher diet. (Wash. Defs.' First Mot., Ex. 3, Decl. of James Miller ["Miller Decl."]; Ex. 5, Decl. of Ethan Earley ["Earley Decl."].) Earley and Miller are

both Washington DOC employees who worked on-site at HDSP to resolve issues regarding inmates who had transferred from Washington under the Housing Contract. (*Id.*, Ex. 3, Miller Decl.; Ex. 5, Earley Decl.) Soon after receiving information regarding Plaintiff's situation, Miller and Earley met with Plaintiff to discuss his request for a kosher diet and offered to have Plaintiff transferred to ESP to accommodate his request. (*Id.*, Ex. 3, Miller Decl., Ex. 5, Earley Decl.) Because Plaintiff stated he did not want to go to ESP, Earley and Miller recommended that Plaintiff's transfer to ESP be cancelled. (*Id.*, Ex. 3, Miller Decl., Ex. 5, Earley Decl.)

Approximately three weeks later, Earley and Washington DOC Defendant David Bailey ("Bailey"), the on-site contract manager at HDSP, conducted another meeting with Plaintiff. (*Id.*, Ex. 4, Decl. of David Bailey ["Bailey Decl."], Ex. 5, Earley Decl.) Earley and Bailey informed Plaintiff that HDSP does not offer a kosher diet and that if Plaintiff wanted to pursue receiving a kosher diet he would have to transfer to ESP because ESP was the only Nevada facility that had an existing kosher kitchen and could accommodate his request. (*Id.*, Ex. 4, Bailey Decl.) According to Defendants, Plaintiff reiterated he did not want to go to ESP. (*Id.*) Plaintiff indicates he expressed concerns about transferring to ESP when prison officials discussed the option with him. (Compl. [Doc. # 9] at 5.) Plaintiff believed transferring to the maximum security facility would require him to give up some of his possessions. (Nev. Defs.' Mot. for Summ. J., Ex. A at 43–44.) Plaintiff viewed a transfer to a higher security facility as a punishment. (*Id.*)

In November 2004, Plaintiff was transferred back to Washington. (Wash. Defs.' First Mot., Ex. 1.) On January 26, 2005, Plaintiff filed a grievance with the Wash-

ington DOC alleging his rights were violated during his incarceration at HDSP because he did not receive a kosher diet. (*Id.*, Ex. 11, Attach.B.) In response, the Washington DOC explained to Plaintiff that the issue was "non-grievable" because the incident occurred at HDSP in Nevada and therefore "should have been addressed at that time, at that facility." (*Id.*)

Plaintiff filed suit in this Court against Nevada DOC and Washington DOC Defendants, alleging § 1983 claims for violation of his Free Exercise and Equal Protection rights and claims for violation of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). This Court previously granted summary judgment in Defendants' favor regarding Plaintiff's § 1983 claims. (Order [Doc. # 182].) Defendants now move for summary judgment on Plaintiff's claim under RLUIPA.

## II. LEGAL STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" demonstrate "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The substantive law defines which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A dispute over a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Where a party fails to offer evidence sufficient to establish an element essential to its case, no genuine issue of material fact

can exist, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party moving for summary judgment bears the initial burden of showing the absence of a genuine issue of material fact. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir.2000). The burden then shifts to the non-moving party to go beyond the pleadings and set forth specific facts demonstrating there is a genuine issue for trial. *Id.; Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001). All justifiable inferences must be viewed in the light most favorable to the non-moving party. *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir.2001). "When the moving party also bears the burden of persuasion at trial, to prevail on summary judgment it must show that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Shakur v. Schriro*, 514 F.3d 878, 890 (9th Cir.2008) (internal quotation omitted).

## III. MOTION FOR SUMMARY JUDGMENT

### A. RLUIPA Claim

■ RLUIPA provides, in relevant part:

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... unless the government demonstrates that imposition of the burden on that person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc–1(a)(1)–(2) (2000). Claims brought under RLUIPA are subject to a strict scrutiny standard, which replaces the reasonableness standard employed in cases involving constitutional violations. *See Henderson v. Terhune*, 379 F.3d 709, 715 n. 1 (9th Cir.2004).

■ RLUIPA broadly defines "religious exercise" as " 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief.' " *Warsoldier v. Woodford*, 418 F.3d 989, 994 (9th Cir.2005) (quoting 42 U.S.C. § 2000cc–2(a)). RLUIPA is "to be construed broadly in favor of protecting an inmate's right to exercise his religious beliefs." *Id.* at 995 (citing 42 U.S.C. § 2000cc–3(g)). The plaintiff bears the initial burden of demonstrating a prima facie claim that the prison's policies or actions constitute a substantial burden on the exercise of his religious beliefs. *Id.* at 994. If the plaintiff meets this burden, the prison bears the burden of persuasion to prove that the substantial burden both furthers a compelling government interest and employs the least restrictive means. *Id.* at 995.

### 1. Substantial Burden

Defendants argue they are entitled to summary judgment because Plaintiff has not established a prima facie case that Defendants substantially burdened the exercise of his religious beliefs. Defendants argue their offer to transfer Plaintiff to another prison to accommodate his request for a kosher diet did not burden Plaintiff's religious exercise. Plaintiff argues Defendants' failure to provide him with a kosher diet at HDSP constituted a substantial burden.

RLUIPA does not define what constitutes a substantial burden. *See* 42 U.S.C. § 2000cc–5; *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir.2004). The United States Court of Appeals for the Ninth Circuit has held that "a substantial burden on religious exercise must impose a significantly great

restriction or onus upon such exercise." *Warsoldier*, 418 F.3d at 995 (citing *San Jose Christian Coll.*, 360 F.3d at 1034) (internal quotation omitted).

A prison policy that pressures an inmate to abandon his religious beliefs imposes a substantial burden. *Shakur*, 514 F.3d at 889 (citing *Warsoldier*, 418 F.3d at 996). An inmate need not be prevented from participating in the exercise to be substantially burdened; conditioning a benefit on an inmate's abandonment of the religious conduct is sufficient. *Warsoldier*, 418 F.3d at 996. For instance, an inmate demonstrated a substantial burden where his refusal to comply with a regulation that conflicted with his religious belief resulted in confinement to his cell, additional duty hours, restricted privileges, and the reduced ability to purchase items from the prison store. *Warsoldier*, 418 F.3d at 996.

Defendants offered Plaintiff the choice of transferring to a higher security facility and receiving kosher meals, or remaining at HDSP with no kosher meals. Plaintiff viewed a transfer from a medium to a maximum security facility as a punishment because he would be required to give up some of his possessions and lose privileges he currently enjoyed. Defendants conditioned Plaintiff's receipt of a kosher meal on his relinquishment of the benefits of living in a lower-security facility. Because conditioning Plaintiff's receipt of a benefit on his abandoning the request for a kosher diet constitutes a substantial burden on Plaintiff's religious exercise, Plaintiff has met his initial burden and Defendants are not entitled to summary judgment on this basis. The burden therefore shifts to Defendants to demonstrate their policy serves a compelling government interest and uses the least restrictive means.

## 2. Compelling Interest

"[M]aintain[ing] good order, security and discipline, consistent with consideration of costs and limited resources," is a compelling government interest. *Cutter v. Wilkinson*, 544 U.S. 709, 722, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005). Avoiding prohibitive expense qualifies as a compelling interest. *Shakur*, 514 F.3d at 889. The parties do not dispute that cost concerns are a compelling government interest; they dispute only whether transferring Plaintiff was the least restrictive means.

## 3. Least Restrictive Means

To prevail on summary judgment, Defendants must establish no genuine issue of material fact remains that its policy of not serving kosher meals at HDSP is the least restrictive means to avoid prohibitive expense. *See* 42 U.S.C. § 2000cc–1(a); 42 U.S.C. § 2000cc2–(b). Defendants argue the Court should defer to its judgment that providing kosher diets at multiple facilities would jeopardize their ability to meet the nutritional needs of the inmate population as a whole.

A prison " 'cannot meet its burden to prove least restrictive means unless it demonstrates that it has actually considered and rejected the efficacy of less restrictive measures before adopting the challenged practice.' " *Shakur*, 514 F.3d at 890 (quoting *Warsoldier*, 418 F.3d at 996). " '[C]onclusory affidavits that do not affirmatively show personal knowledge of specific facts are insufficient.' " *Id.* (quoting *Casey v. Lewis*, 4 F.3d 1516, 1527 (9th Cir.1993)). The government must produce competent evidence as to the additional cost of providing the special diet. *Id.* Likewise, assertions that a practice is the least restrictive means do not suffice. *Id.*

Defendants have not demonstrated the absence of a genuine issue of material fact as to whether transferring inmates to another location rather than providing them a kosher diet at HDSP is the least restrictive means of providing kosher meals to Jewish inmates. Defendants have offered no evidence they considered alternatives to a transfer, such as providing pre-packaged or frozen kosher meals. Defendants also have not offered any concrete evidence of the costs of alternatives they may have considered. Rather, Defendants only assert that providing kosher meals at HDSP is cost effective and argue the Court should defer to that assessment. Because Defendants have not provided any evidence they considered various means of providing kosher diets to Jewish inmates at HDSP, or evidence supporting their claims of cost concerns, Defendants have not met the burden of demonstrating their policy is the least restrictive means to avoiding prohibitive expense and Defendants therefore are not entitled to summary judgment on this basis.

### B. Qualified Immunity

Defendants assert they are entitled to qualified immunity on Plaintiff's RLUIPA claim. Plaintiff argues Defendants are not entitled to qualified immunity because they violated his clearly established rights under RLUIPA.

### 1. The Application of Qualified Immunity to RLUIPA

Whether RLUIPA allows suits against officials in their individual capacities is unsettled. And, because qualified immunity is relevant only to individual capacity claims, whether qualified immunity has any application to RLUIPA claims also is uncertain. RLUIPA states, in relevant part, that "[a] person may assert a violation of this chapter as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." 42

U.S.C. § 2000cc–2(a). This provision creates a private cause of action, but limits the source of relief to a "government." *Id.* RLUIPA broadly defines "government" to include governmental entities created under the authority of a state, an official of a government entity, or "any other person acting under color of state law." *Id.* § 2000cc–5.

Despite a plaintiff's apparent ability to sue any person acting under color of state law, the United States Court of Appeals for the Eleventh Circuit recently held RLUIPA does not permit claims against officials in their individual capacities because construing RLUIPA to allow such suits would raise serious constitutional concerns. *Smith v. Allen,* 502 F.3d 1255, 1275 (11th Cir.2007). The Eleventh Circuit noted that Congress passed RLUIPA pursuant to its under Article I of the Constitution. *Id.* at 1272. The Court reasoned that federal statutes enacted under the spending power, which condition receipt of federal funds on a state's adherence to certain conditions, cannot subject a non-recipient of federal funds, such as a state official acting in his individual capacity, to private liability for damages. *Id.* at 1273. Thus, the Court reasoned that, as spending power legislation, RLUIPA cannot reach state officials in their individual capacities. *Id.* at 1273, 1275. Because only suits against individuals in their personal capacities implicate qualified immunity, the Eleventh Circuit held that qualified immunity would have no application to RLUIPA claims. *Id.* at 1275 n. 11.

The Eleventh Circuit is the only Circuit Court of Appeals that squarely has addressed this issue. Other Circuit Courts of Appeals have assumed without discussion that RLUIPA permits suits against state officials in their personal capacities. *See Shakur,* 514 F.3d 878 (9th Cir.2008) (reversing grant of summary judgment in

case involving several defendants sued in their individual capacities); *Williams v. Bitner*, 455 F.3d 186, 194 (3d Cir.2006) (assuming personal capacity suits are proper under RLUIPA and qualified immunity would apply to RLUIPA, but did not apply because the plaintiff sought only injunctive relief); *Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir.2006) (assuming without discussion qualified immunity applies to RLUIPA claims); *Lovelace v. Lee*, 472 F.3d 174, 196–97 (4th Cir.2006) (applied qualified immunity analysis to RLUIPA claim).

Plaintiff has sued Defendants in their official and individual capacities. No law in this jurisdiction directly addresses Plaintiff's ability to sue Defendants in their individual capacities under RLUIPA.[1] Under the Eleventh Circuit's analysis, Plaintiff would have no individual capacity claim. The Court need not decide this novel issue here, however, because even if Plaintiff could bring an individual capacity claim under RLUIPA, Defendants would be entitled to qualified immunity.

### 2. Defendants' Entitlement to Qualified Immunity

Officials of the Executive Branch exercising discretionary functions generally enjoy qualified immunity for actions within the scope of their official duties. *Harlow v. Fitzgerald*, 457 U.S. 800, 807, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Qualified immunity applies unless a defendant's conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 752 (2002) (internal quotation omitted). To determine whether a government official is entitled to qualified immunity, a court first must address whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the defendant violated a statutory or constitutional right. *See Resnick v. Adams*, 348 F.3d 763, 766–67 (9th Cir. 2003). Plaintiff has alleged Defendants violated his statutory rights under RLUIPA, as this Court already has addressed.

If "a violation could be made out" the court next must decide whether the right was clearly established. *Id.* "The plaintiff bears the burden of showing that the right he alleges to have been violated was clearly established." *Collins v. Jordan*, 110 F.3d 1363, 1369 (9th Cir.1996). A clearly established right is one whose "contours ... must be sufficiently clear that a reasonable official would understand what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). The right is clearly established if "it would be clear to a reasonable offer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). The exact action need not have been held unlawful, but "in light of pre-existing law the unlawfulness must be apparent." *Anderson*, 483 U.S. at 640, 107 S.Ct. 3034 (internal citations omitted). This evaluation must be "in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201, 121 S.Ct. 2151. An objective standard applies. *Harlow*, 457 U.S. at 818–19, 102 S.Ct. 2727. Additionally, the right must be

---

1. Neither party has addressed specifically Plaintiff's claims against Defendants in their official capacities. RLUIPA permits suits against state officials in their official capacities for injunctive relief. *Mayweathers v. Newland*, 314 F.3d 1062, 1069–70 (9th Cir.2002). Because Plaintiff already has been transferred out of NDOC's custody, any claim for injunc- tive relief would be moot. *See Rhodes v. Robinson*, 408 F.3d 559, 566 n. 8 (9th Cir. 2005). Absent any claim for injunctive relief, Plaintiff has no surviving claim against a state official in his official capacity, so Plaintiff has no surviving claims against Defendants in their official capacities.

clearly established at the time of the allegedly impermissible conduct. *Camarillo v. McCarthy,* 998 F.2d 638 (9th Cir.1993).

 That an inmate has a constitutional right to "food sufficient to sustain them in good health that satisfies the dietary laws of their religion" is clearly established in the Ninth Circuit. *See Ashelman v. Wawrzaszek,* 111 F.3d 674, 677 (9th Cir.1997); *Ward v. Walsh,* 1 F.3d 873, 876 (9th Cir.1992); *McElyea v. Babbitt,* 833 F.2d 196, 198 (9th Cir.1987). The issue here is whether Plaintiff had a clearly established right under RLUIPA to a kosher diet at HDSP, such that requiring him to transfer to a higher security prison to obtain the diet violated his clearly established right. Defendants offered Plaintiff a kosher diet at ESP in April 2004. Plaintiff has identified no law supporting the existence of a clearly established right to a dietary accommodation at a particular institution. Plaintiff also has failed to identify any controlling law as of April 2004 indicating Defendants' attempt to satisfy Plaintiff's request for a kosher diet by transferring him was unlawful under RLUIPA.

In light of the lack of legal precedent on this issue, it would not have been clear to a reasonable official in April 2004 that offering Plaintiff a transfer to a higher security prison to accommodate his religious diet would violate Plaintiff's rights under RLUIPA. Defendants therefore are entitled to qualified immunity from Plaintiff's RLUIPA claim. Even if Plaintiff properly can assert a claim against Defendants in their individual capacities under RLUIPA, Defendants are entitled to qualified immunity. This Court therefore will grant summary judgment in Defendants' favor.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that State of Nevada Defendants' Motion for Summary Judgment (Doc. # 187) is hereby GRANTED.

IT IS FURTHER ORDERED that Washington DOC Defendants' Motion for Summary Judgment on Plaintiff's RLUIPA Claim and Memorandum in Support Thereof (Doc. # 186) is hereby GRANTED.