**Juan M. PÉREZ, Petitioner,**

v.

**Matthew J. FRANK, Richard Raemisch, Catherine Farrey, Lizzie A. Tegels, Sue Nault, Melanie Faust, and Mark Teslik, in their individual and official capacities, Respondents.**

No. 06–C–248–C.

United States District Court, W.D. Wisconsin.

May 25, 2006.

Corey F. Finkelmeyer, Assistant Attorney General, Madison, WI, for Respondents.

### OPINION AND ORDER

CRABB, District Judge.

In this civil action for declaratory, injunctive and monetary relief under 42 U.S.C. § 1983, petitioner Juan M. Pérez, a prisoner at the New Lisbon Correctional Institution in New Lisbon, Wisconsin, contends that respondents deprived him of his rights under the free speech, free exercise and establishment clauses of the First Amendment, the equal protection clause of the Fourteenth Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA) by refusing to provide him with a variety of religious programs and accommodations and by denying him mail sent to him from outside the prison. Jurisdiction is present under 28 U.S.C. § 1331.

Petitioner has requested leave to proceed *in forma pauperis*, as authorized by 28 U.S.C. § 1915. In an order dated May 9, 2006, I conclude that petitioner was unable to prepay the full fees and costs of starting this lawsuit and assessed him an initial partial payment of $28.57. In the same order, I mistakenly listed the fee for filing the lawsuit as $250. Because the filing was increased from $250 to $350 on April 9, 2006, and petitioner signed his complaint on May 1, 2006, the filing fee for this lawsuit is $350. Petitioner has paid $250, an amount exceeding the initial partial payment required under § 1915(b)(1). The remainder of the payment must be

paid in monthly installments, as provided in 28 U.S.C. § 1915(b)(2).

In addressing any *pro se* litigant's complaint, the court must construe the complaint liberally. *Haines v. Kerner,* 404 U.S. 519, 521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Nevertheless, when the litigant is a prisoner, the court must dismiss the complaint if the claims contained in it, even when read broadly, are legally frivolous, malicious, fail to state a claim upon which relief may be granted, or seek money damages from a defendant who is immune from such relief. 28 U.S.C. § 1915A. Because petitioner's equal protection claims are duplicative of his free exercise claims, he will be denied leave to proceed on his claim under the equal protection clause. Because petitioner does not allege that prison officials substantially burdened his ability to perform ritual ablutions, he will be denied leave to proceed on his claim that respondents violated the free exercise clause and RLUIPA by limiting his ability to perform ablutions to the hours when the prison dayroom was open. Because he does not allege that inmates of other religions are permitted to possess greater quantities of consumable religious property or to hold religious services without the aid of an outside volunteer, petitioner will be denied leave to proceed on his claim that respondents violated his rights under the establishment clause by depriving him of adequate quantities of prayer oil and opportunities to engage in group prayer and study. However, petitioner will be granted leave to proceed on his claim that respondents violated his rights by (1) prohibiting him from possessing adequate quantities of prayer oil, engaging in group prayer and study, eating dates during Ramadan and holding feasts on the holy days of 'Eid ul-Adha and 'Eid al-Fitr without having a legitimate penological purpose for doing so; (2) depriving him of religiously acceptable foods while providing special foods to non-Muslim inmates; and (3) refusing to deliver mail he received on October 31, 2005.

In his complaint, petitioner alleges the following facts.

## ALLEGATIONS OF FACT

### A. *Parties*

Plaintiff Juan Pérez is an inmate at the New Lisbon Correctional Institution in New Lisbon, Wisconsin. He is a practicing Sunni Muslim.

Respondent Matthew J. Frank is Secretary of the Wisconsin Department of Corrections.

Respondent Richard Raemisch is Deputy Secretary of the Wisconsin Department of Corrections.

At all times relevant to this lawsuit, respondent Catherine J. Farrey was employed by the Wisconsin Department of Corrections as Warden of New Lisbon Correctional Institution in New Lisbon, Wisconsin.

Respondent Lizzie A. Tegels is Assistant Warden of New Lisbon Correctional Institution.

Respondent Sue Nault is employed as the Education Director of New Lisbon Correctional Institution.

Respondent Melanie Faust is employed as the Program Director of the New Lisbon Correctional Institution.

Respondent Mark Teslik is employed as Chaplain of New Lisbon Correctional Institution.

### B. *Denial of Religious Rights*

Petitioner believes he must perform "good deeds" to enter heaven, which he asserts is the ultimate goal of a Muslim. These good deeds include engaging in religious practices (such as Jumu'ah, Ta'alim,

Wudu and using prayer oil) and eating certain foods (such as dates during Ramadan and Halaal foods on feast days). Petitioner believes that if he does not perform good deeds, he will not obtain a "place in the Afterlife" or "blessings from Allah."

### 1. Requests for religious programming

When petitioner arrived at the New Lisbon Correctional Institution on June 2, 2004, he attended an orientation session conducted by respondent Teslik, during which Teslik stated there would be no Islamic services held for inmates until the prison located an "outside spiritual volunteer" to lead religious services.

### a. Jumu'ah and Ta'alim services

After attending the orientation session, petitioner wrote to respondent Teslik asking him to offer Jumu'ah (Friday prayer) and Ta'alim (study). In his letter, petitioner asserted that no rule prohibited the prison from holding Islamic services without an outside spiritual volunteer present. Respondent Teslik did not respond.

On June 10, 2004, petitioner wrote to respondent Farrey, relaying his concerns about the lack of religious services and study opportunities for Muslim inmates, and describing his interactions with respondent Teslik. Respondent Farrey did not respond.

On September 9, 2004, petitioner sent respondent Teslik a "memo" in which he complained about the lack of opportunities to practice his faith. In the memo, petitioner suggested that respondent Teslik could alleviate some of the burdens on petitioner's free exercise by permitting Muslims to read to each other from pre-approved religious books without deviating from the text, to pray together or tutor each other in Arabic. Petitioner suggested also that the prison purchase audio tapes "on Arabic." Respondent Teslik did

not respond. On September 24, 2004, petitioner wrote to respondent Nault, telling her that respondent Teslik had not written back to him and sending her a copy of the memo he had sent to Teslik. Petitioner sent a copy of this letter to respondent Farrey.

On September 18, 2005, petitioner sent a memo to respondent Farrey, asking her to permit Muslim inmates to conduct and lead their own prayer and worship services. In the memo, petitioner asserted that he had a right to participate in inmate-led services and that there was no legitimate reason to prevent him from engaging in his religious practices. Petitioner sent a copy of the memo to respondent Frank.

In a letter dated September 28, 2005, respondent Faust responded to petitioner on respondent Farrey's behalf, telling petitioner that prison policy prohibits inmates from leading religious services for other inmates. She did not explain the purpose behind the policy.

Inmates at the New Lisbon Correctional Institution are permitted to teach and tutor other inmates in art, music and recreational programs. Before April 17, 2001, Muslim inmates at the prison were permitted to lead their own worship services and study groups. They are no longer permitted to do so. Because he was unable to participate in Jumu'ah and Ta'alim from June 2, 2004 to March 10, 2006, petitioner has been deprived of the blessings that come from participating in those activities.

### b. Wudu

On August 18, 2005, the prison promulgated a new policy that prohibited inmates from using the restroom to perform Wudu (ablution) when the unit's dayroom was closed. (Wudu "is the act of washing parts of the body using clean water, performed

by Muslims as part of the preparation for ritual worship." Wikipedia, http://en.wikipedia.org/wiki/Wudu, (last visited May 22, 2006)). If petitioner cannot perform ablution, he cannot remain in a state of Tahara (purification) and is unable to read the Qur'an and make Salaat (prayer) at the earliest time. On August 19, 2005, petitioner told respondent Teslik that the new policy prevented him from praying and studying the Qur'an during the hours the dayroom was closed.

Respondent Teslik took no action, so petitioner filed an inmate complaint numbered NLCI 2005–26700, challenging the limits placed on his ability to perform Wudu. The complaint was dismissed by respondents Farrey, Tegels and Raemisch.

### 2. *Food requests*

#### a. Request for dates

On September 3, 2004, petitioner wrote to respondent Teslik, asking that on each day of Ramadan, Muslim inmates be provided with three dates with which to break their daily fast. Petitioner explained that breaking the fast with three dates was traditional Islamic practice. Respondent Teslik did not respond.

On September 28, 2004, petitioner sent a memo to respondent Nault, to which he attached a copy of the request he had sent respondent Teslik. Petitioner sent a copy of the memo and its attachment to respondent Farrey. On October 11, 2004, respondent Nault responded to petitioner, denying his request because prisoners at other institutions were not given dates. Petitioner filed an inmate request, numbered NLCI 2004–34979, challenging the decision. Respondent Farrey dismissed the complaint and respondent Raemisch denied petitioner's appeal.

On October 16, 2004, petitioner began his Ramadan fast. No dates were provided to him during the entire month of Ramadan.

The following year, petitioner wrote again to respondents Teslik, Faust and Farrey, asking that he be given three dates on each day of Ramadan with which to break his fast. Again, the request was denied, and petitioner's inmate complaint, numbered NLCI 2005–28667, was dismissed by respondent Farrey and his appeal denied by respondent Raemisch.

On October 5, 2005, petitioner began his Ramadan fast and was not given dates. As a result, petitioner was deprived of the rewards and blessings that come from celebrating Ramadan in accordance with the Sunnah (practice) of the Prophet.

#### b. Request for hot meals

On August 29, 2005, petitioner asked respondent Teslik to allow Muslim inmates who were participating in the Ramadan fast to warm their bagged breakfast meals in the microwave and to have hot meals in the evening. Petitioner sent a copy of his request to respondents Faust and Farrey.

On October 4, 2005, respondent Teslik issued a memo in which he stated that "bag lunches" did not need to be heated and that Muslim inmates would not be served hot meals during the first fifteen days of Ramadan. He did not explain the reason for his decision.

Petitioner filed an inmate complaint, numbered NCLI 2005–30810, asserting that the prison had no legitimate reason for denying inmates the opportunity to warm their morning meals or be given hot evening meals. Respondent Farrey dismissed the complaint and Raemisch denied petitioner's appeal.

When Muslim inmates began their 2005 fast, prison staff members did not allow them to use the microwave to heat up their meals and did not provide hot meals to the

inmates in the evening. Petitioner was forced to eat cold meals for most of the month of Ramadan. However, inmates who work third shift jobs are permitted to warm their breakfast bags and inmates participating in visits during meal times are served hot meals at a later time than the general inmate population.

#### c. 'Eid al-Fitr feast

On August 29, 2005, petitioner handed respondent Teslik a memo, in which he requested accommodations for the feast of 'Eid al-Fitr (the celebration that marks the end of Ramadan). In the memo, petitioner reminded respondent Teslik of the importance of congregational prayer to Muslims on the feast day and asked for special foods that would permit inmates to celebrate the feast in accordance with Islamic dietary law. Petitioner sent a copy of his request to respondents Faust and Farrey.

On November 3, 2005, the prison held an event it dubbed an "Eid celebration." However, no congregate prayer was offered and the meal provided was not in accordance with Islamic dietary law.

#### d. 'Eid ul-Adha feast

On December 4, 2005, petitioner sent a request to respondent Farrey, asking that Muslim inmates be provided with a feast and an opportunity for group prayer on 'Eid ul-Adha (a day that "commemorates the prophet Abraham's willingness to sacrifice his son for God" and the day that marks the end of the pilgrimage to Mecca made each year by millions of Muslims. Wikipedia, http://en.wikipedia.org/wiki/Eid—ul-Adha (last visited on May 22, 2006)). Petitioner offered to defray the cost of the feast by pooling money donated by himself and other Muslim inmates. On December 30, 2005, respondent Farrey denied the request, stating that other prisons did not provide the accommodations petitioner had requested.

Petitioner filed inmate complaints, numbered NLCI 2006–85 and NLCI 2006–86, challenging the denial of group prayer and a religious feast containing Halaal foods (those in accordance with Islamic law). Respondent Tegels dismissed the complaint and respondent Raemisch denied petitioner's appeal.

Respondents Raemisch, Farrey, Tegels, Faust and Teslik provide special foods and extra food for religious and secular holidays, such as New Year's Day, Easter Sunday, the Fourth of July, Labor Day, Thanksgiving and Christmas. They provide a feast for inmates receiving their high school equivalency diplomas and provide special foods for Wiccan inmates. However, they prohibit Muslim inmates from receiving special food for the two Muslims holidays of 'Eid al-Fitr and 'Eid ul-Adha, thereby depriving petitioner of the rewards and blessings he would receive from participating in these activities.

#### 3. *Prayer oil*

From the time petitioner arrived at the New Lisbon Correctional Institution to the time he filed this lawsuit, he has been forced to go without prayer oil for "protracted periods of time," as a result of the prison's policies. The current policy regarding prayer oil allows Muslim inmates to purchase one 1 oz. bottle of prayer oil from the chaplain each month. In order to receive a new bottle, inmates must first return their empty bottles to the chaplain. This policy leaves inmates without prayer oil from the time each turns in his empty bottle until the time the chaplain provides him with a new bottle of oil.

On December 1, 2005, petitioner wrote to respondent Faust, asking that the prison allow inmates to purchase prayer oil through the institution's commissary every

week; stop requiring inmates to return empty bottles before receiving new ones; and permit inmates to possess one full bottle of prayer oil and one partially used bottle so they do not go without prayer oil for any protracted period of time while trying to purchase a new bottle. Petitioner sent a copy of his letter to respondents Farrey and Frank.

Petitioner filed an inmate complaint, numbered NLCI 2005–37944. The complaint was dismissed at the institutional level, but was partially affirmed by respondents Tegels and Raemisch on appeal. Despite the partial affirmance, no definite or immediate change was made to the policy.

Respondents Teslik, Nault, Faust, Farrey, Tegels and Raemisch allow inmates to possess "one and a half times the amount of" items such as cocoa oil and baby oil, but do not allow Muslim inmates to possess more than one 1 oz. bottle of prayer oil at any given time.

As a result of the prison policy, petitioner has been deprived periodically of the rewards and blessings that come from using prayer oil before praying.

### C.  Denial of Mail

On October 31, 2005, petitioner was sent photocopies of a magazine article containing the text of lectures given by petitioner's sheikh. Petitioner was denied the materials because prison officials alleged that the photocopies violated copyright laws.

Petitioner filed an inmate complaint, numbered NLCI 2005–34158, regarding the denial of his photocopies. The complaint was dismissed by respondent Tegels and petitioner's appeal of the dismissal was denied by respondent Raemisch.

### OPINION

Petitioner's allegations raise potential claims under four sources of law: the First Amendment's free exercise and establishment clauses, RLUIPA and the equal protection clause of the Fourteenth Amendment. Because petitioner's equal protection claim is really a restatement of his free exercise claim, *Mack v. O'Leary,* 80 F.3d 1175, 1181 (7th Cir.1996), *overruled on other grounds,* 522 U.S. 801, 118 S.Ct. 36, 139 L.Ed.2d 5 (1997) (Muslim prisoner's equal protection claim "could equally well be described as a claim under the free-exercise clause"), I will analyze his allegations under the First Amendment and RLUIPA only.

### A.  Free Exercise

Inmates raising claims under 42 U.S.C. § 1983 that government officials have impeded their ability to practice their religious beliefs have two means of recourse: the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc–1, and the free exercise clause of the First Amendment. I will address each in turn.

### 1.  RLUIPA claim

The Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. § 2000cc–1(a)(1)–(2), prohibits the government from imposing "a substantial burden on the religious exercise of a person residing in or confined to an institution," unless the burden furthers "a compelling governmental interest," and does so by "the least restrictive means." *Cutter v. Wilkinson,* 544 U.S. 709, 125 S.Ct. 2113, 2114, 161 L.Ed.2d 1020 (2005). RLUIPA is designed to "protect[ ] institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." *Id.* at 2122.

The protections afforded by RLUIPA apply where:

(1) the substantial burden is imposed in a program or activity that receives Federal financial assistance; or

(2) the substantial burden affects, or removal of that substantial burden would affect, commerce with foreign nations, among the several States, or with Indian tribes.

42 U.S.C. § 2000cc–1(b). Because the Wisconsin Department of Corrections receives and uses federal grant money for substance abuse treatment programs in its state prison facilities, the requirements of the Act apply to it.

To show that his rights under RLUIPA were violated, plaintiff must first establish that defendant's refusal to permit him to possess sufficient prayer oil, to have dates during Ramadan and to engage in Jumu'ah, Ta'alim, Wudu and group prayer and feasting during 'Eid al-Fitr and 'Eid ul-Adha place a substantial burden on the exercise of his religious beliefs. 42 U.S.C. § 2000cc–2(b); *Hernandez v. Commissioner*, 490 U.S. 680, 699, 109 S.Ct. 2136, 104 L.Ed.2d 766 (1989). Although RLUIPA does not define the term "substantial burden," the Court of Appeals for the Seventh Circuit has held that a substantial burden is "one that necessarily bears a direct, primary, and fundamental responsibility for rendering religious exercise ... effectively impracticable." *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir.2003). Under the statute, a "religious exercise" is "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc–5 (7)(A).

■ With respect to Wudu, petitioner contends only that he is unable to make Wudu during the hours the prison's dayroom is closed. Although prisons must accommodate prisoners when they are reasonably able to do so, they are under no obligation to provide inmates with 24-hour–a–day access to all desired opportunities for religious expression. Because petitioner has not alleged that his ability to make Wudu has been rendered "effectively impracticable," he will be denied leave to proceed on his claim that prison officials violated his rights under RLUIPA by restricting his ability to perform ritual ablutions to hours during which the prison dayroom is open.

■ However, petitioner has alleged that he has been prevented completely from engaging in Jumu'ah, Ta'alim and in group prayer during 'Eid al-Fitr and 'Eid ul-Adha. In addition, he alleges that respondents Teslik, Nault, Farrey, Faust and Raemisch denied him dates during Ramadan and respondents Farrey and Tegels deprived him of a feast during 'Eid ul-Adha. Moreover, he alleges that the respondents Teslik, Faust and Farrey refused to provide religiously suitable foods for the 'Eid al-Fitr feast. Prison regulations that limit an inmate's ability to freely practice his religion are not necessarily impermissible: if an inmate's "request[ ] for religious accommodations become[s] excessive, impose[s] unjustified burdens on other institutionalized persons, or jeopardize[s] the effective functioning of an institution, the prison [is] free to resist the imposition." *Cutter*, 544 U.S. at 726, 125 S.Ct. 2113.

Nevertheless, at this stage in the proceedings, it is too early to tell whether the New Lisbon Correctional Institution had legitimate reasons for denying petitioner the accommodations he requested. Therefore, I will grant petitioner leave to proceed on his claim that respondents Teslik, Farrey, Nault, Faust, Tegels and Raemisch violated his rights under RLUIPA by promulgating and enforcing policies that deprived him of the ability engage in Jumu'ah, Ta'alim and group prayer during 'Eid al-Fitr and 'Eid ul-Adha, eat dates

during Ramadan and feast on Halaal foods during 'Eid ul-Adha and 'Eid al-Fitr.

■ Furthermore, petitioner will be given leave to proceed on his claim that respondents Tegels and Raemisch denied him adequate access to prayer oil. In *Charles v. Verhagen,* 220 F.Supp.2d 955, 969 (W.D.Wis.2002), this court enjoined Wisconsin Department of Corrections officials from enforcing their procedures regarding religious property in ways that would prevent the plaintiff in that lawsuit from possessing a reasonable quantity of prayer oil in his cell. In a subsequent order, after finding that a one ounce bottle of prayer oil was an amount sufficient to last two weeks, I rejected the plaintiff's contention that one ounce of prayer oil was not a "reasonable amount." *Charles v. Verhagen,* 2002 WL 32361838, *1 (W.D.Wis.2002) (unpublished order). Therefore, to the extent that petitioner contends that respondents Tegels and Raemisch are violating his rights by refusing to allow him to possess more than one ounce of prayer oil at a time, he fails to state a claim.

However, petitioner does not object so much to the amount of oil he is permitted to possess as to the way in which prison officials require him to go about refilling his prayer oil. Because petitioner must turn in his empty bottle before he may receive a new one, there is often a lag between the time he returns an empty bottle and the time he receives a new bottle of oil. During this time, he goes without any prayer oil. It is unclear whether this "lag time" lasts several hours or several days. Although a short delay would be insufficient to support a claim that his free exercise right have been violated, I cannot rule out the possibility that petitioner may be able to show that respondents' policy regarding prayer oil has placed a substantial burden on his ability to exercise his faith. Therefore, he will be granted leave to proceed on his claim that respondents Tegels and Raemisch violated his rights under RLUIPA by enforcing policies that leave him without prayer oil for protracted periods of time.

### 2. *Free exercise clause*

■ The protections offered by the free exercise clause of the First Amendment are more limited than those extended under RLUIPA. Therefore, any claim that fails under RLUIPA will fail inevitably under the First Amendment's more stringent requirements. Although RLUIPA protects "any exercise of religion, whether or not compelled by, or central to, a system of religious belief," 42 U.S.C. § 2000cc–5(7), traditional First Amendment jurisprudence protects only "the observation of [ ] central religious belief[s] or practice[s]." *Civil Liberties for Urban Believers,* 342 F.3d at 760. To assert a free exercise claim, petitioner must allege facts from which an inference may be drawn that the government has placed "a substantial burden on the observation of a central religious belief or practice." *Hernandez v. Commissioner of Internal Revenue,* 490 U.S. 680, 699, 109 S.Ct. 2136, 104 L.Ed.2d 766 (1989). In addition, because the free exercise clause allows states to enforce neutral laws of general applicability even when those laws significantly burden religious practices, *Employment Division Department of Human Resources of Oregon v. Smith,* 494 U.S. 872, 887, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990), the clause is violated only when the government intentionally targets a particular religion or religious practice. *Sasnett v. Sullivan,* 91 F.3d 1018, 1020 (7th Cir.1996), *vacated on other grounds,* 521 U.S. 1114, 117 S.Ct. 2502, 138 L.Ed.2d 1007 (1997).

■ Petitioner contends that he has lost the ability to receive blessings and re-

wards from Allah as a result of his inability to engage in each of the practices he names. However, he does not indicate whether each of these practices is "central" to the practice of his religion. Construing petitioner's complaint liberally, as I must at this stage in the proceedings, I will infer that he believes the use of prayer oil, the practice of Wudu, the consumption of dates during Ramadan and participation in Jumu'ah, Ta'alim, and the prayers and feasts associated with 'Eid al-Fitr and 'Eid ul-Adha are central practices of the Sunni Muslim tradition. Therefore, I will allow him to proceed under the free exercise clause on the same claims he is pursuing under RLUIPA; namely, that respondents Teslik, Farrey, Nault, Faust, Tegels, Raemisch and Frank violated his rights by promulgating and enforcing policies that deprived him of the ability to possess adequate quantities of prayer oil, engage in Jumu'ah, Ta'alim and group prayer during 'Eid al-Fitr and 'Eid ul-Adha, eat dates during Ramadan and feast on Halaal foods during 'Eid ul-Adha and 'Eid al-Fitr. However, petitioner should be aware that it will be his burden to demonstrate that respondents' failure to provide him with access to these services and opportunities substantially burdened a belief or practice central to his religion. *Kaufman v. McCaughtry*, 419 F.3d 678, 683 (7th Cir. 2005).

### B. *Establishment*

■ The establishment clause of the First Amendment prevents the government from promoting any religious doctrine or organization or affiliating itself with one. *County of Allegheny v. American Civil Liberties Union*, 492 U.S. 573, 590, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989). In addition, it "prohibits the government from favoring one religion over another without a legitimate secular reason." *Kaufman*, 419 F.3d at 683. The clause is violated when "the challenged governmental practice either has the purpose or effect of 'endorsing' religion." *County of Allegheny*, 492 U.S. at 592, 109 S.Ct. 3086 (citations omitted); it is not violated when a governmental entity provides opportunities for institutionalized inmates to practice their religion, provided that the entity does so in an evenhanded way.

An inmate of a minority faith is entitled under the free exercise clause of the First Amendment to "a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts." *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972). Further, in deciding which religions are entitled to certain privileges, prison officials may not "pick and choose between religions without any justification." *Sasnett*, 197 F.3d at 292–93 (holding that prison officials violated free exercise clause when they limited wearing of crosses to those attached to rosary, even though crosses on rosaries are more dangerous than crosses by themselves); *see also Native American Council of Tribes v. Solem*, 691 F.2d 382, 385 (8th Cir.1982) (holding that inmate stated claim under free exercise clause when he alleged that Christian inmates were allowed to participate in religious ceremonies with friends and family but Native American inmates were not allowed to do so).

With respect to religious programming, petitioner has not alleged that prison officials permit inmates of other religions to preside over prayer services while denying the same opportunity to Muslim inmates. Similarly, petitioner does not allege that inmates of other religions are permitted to possess extra amounts of consumable religious goods (such as sage or sweet grass for Native American inmates or holy water for Catholic inmates), while permitting

Muslim inmates to possess only one bottle of prayer oil at a time. Because petitioner has not alleged that prison policies regarding religious services or property favor inmates of other religions over Muslim inmates, he has not stated a claim under the establishment clause with respect to the denial of group prayer, Ta'alim, Wudu or prayer oil.

■ However, with respect to the accommodations made for religious feasts and fasts, petitioner alleges that Christian inmates are provided with special and extra foods on Christmas and Easter and that Wiccan inmates are given special foods for their feasts. Although petitioner concedes that the prison sponsored a "feast" for 'Eid al-Fitr, he alleges that the feast did not contain religiously-acceptable Halaal foods, no feast was held for 'Eid ul-Adha and no dates were given to him during Ramadan. To the extent petitioner contends that the religious traditions of other inmates are being accommodated while Islamic traditions are not, his allegations state a claim under the establishment clause. Therefore, I will grant him leave to proceed on his claim that respondents Teslik, Nault, Farrey, Faust, Tegels and Raemisch violated his rights under the establishment clause of the First Amendment by depriving him of Halaal food and dates during Ramadan, 'Eid al-Fitr and 'Eid ul-Adha, while providing special foods to non-Muslim inmates for their religious feast days.

Nevertheless, petitioner should be aware that the Constitution does not prohibit all differential treatment of prisoners in matters relating to religion. In *Cruz*, 405 U.S. at 322 n. 2, 92 S.Ct. 1079, the Supreme Court noted that the requirement of providing all faiths with a reasonable opportunity to practice their faith does not mean that each faith is entitled to identical services. In choosing how to allocate re-

sources, prison officials are entitled in some instances to consider factors such as the number of inmates that belong to a particular faith. *Id.* This does not mean that respondents may avoid liability simply by stating that they denied petitioner's requests because there are more Christians than Muslims at the prison. Rather, if petitioner shows that defendants treated Muslims differently from Christians, respondents will have to show that their denials were reasonably related to a legitimate penological interest in providing Christian inmates with more or different privileges than Muslim inmates. *Tarpley v. Allen County, Indiana,* 312 F.3d 895, 898 (7th Cir.2002). In determining whether government conduct is reasonably related to a legitimate penological interest, the court considers four factors: (1) whether a valid, rational connection exists between the regulation and a legitimate government interest behind the rule; (2) whether there are alternative means of exercising the right in question that remain available to prisoners; (3) the impact accommodation of the asserted constitutional right would have on guards and other inmates and on the allocation of prison resources; and (4) the existence of obvious, easy alternatives as evidence that the regulation is not reasonable. *Id.*

### C. Free Speech

■ The First Amendment's guarantee of freedom of speech provides protection against censorship of a prisoner's incoming and outgoing correspondence. *Rowe v. Shake,* 196 F.3d 778, 782 (7th Cir.1999) (citing *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987); *Thornburgh v. Abbott,* 490 U.S. 401, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989)). However, "the legitimate governmental interest in the order and security of penal institutions justifies the imposition of certain restraints on inmate correspondence." *Pro-*

*cunier v. Martinez*, 416 U.S. 396, 412–413, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974). Refusal to deliver incoming mail to an inmate is constitutional if it is "reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89–90, 107 S.Ct. 2254.

In this case, petitioner alleges that prison officials refused to deliver to him copies of lectures given by his sheikh and reprinted in a magazine. According to petitioner, prison officials would not deliver the articles because they believed the photocopies "violated copyright laws." Prison officials have a clear interest in preventing prisoners from violating the law. However, at this stage of the proceedings, it is not clear that petitioner's article did, in fact, violate copyright laws or that prison officials had reason to believe that it did. Therefore, I will grant petitioner leave to proceed against respondents Tegels and Raemisch on his claim that they violated his First Amendment rights by refusing to deliver the photocopied article received October 31, 2005.

### ORDER

IT IS ORDERED that petitioner Juan Pérez's request to proceed *in forma pauperis* is

1. GRANTED with respect to petitioner's claims that

a) Respondents Teslik, Farrey, Nault, Faust, Tegels, Raemisch and Frank violated his rights under RLUIPA and the free exercise clause of the First Amendment by promulgating and enforcing policies that deprived him of the ability to possess adequate quantities of prayer oil, engage in Jumu'ah, Ta'alim and group prayer during 'Eid al-Fitr and 'Eid ul-Adha, eat dates during Ramadan and feast on Halaal foods during 'Eid ul-Adha and 'Eid al-Fitr;

b) Respondents Teslik, Nault, Farrey, Faust, Tegels and Raemisch violated his rights under the establishment clause of the First Amendment by depriving him of Halaal food and dates during Ramadan, 'Eid al-Fitr and 'Eid ul-Adha, while providing special foods to non-Muslim inmates for their religious feast days.

c) Respondents Tegels and Raemisch violated his free speech rights under the First Amendment by refusing to deliver a photocopied article he received on October 31, 2005;

2. DENIED with respect to petitioner's claims that

a) Respondents Teslik, Nault, Farrey, Raemisch and Frank violated his rights under RLUIPA or the free exercise clause of the First Amendment by denying him access to the restroom for Wudu during hours when the prison dayroom was closed.

b) Respondents Teslik, Farrey, Nault, Faust, Tegels, Raemisch and Frank violated his rights under the establishment clause of the First Amendment by promulgating and enforcing policies that deprived him of the ability to possess adequate quantities of prayer oil and engage in group prayer, Ta'alim and Wudu;

c) Respondents Teslik, Farrey, Nault, Faust, Tegels, Raemisch and Frank violated his rights under the equal protection clause of the Fourteenth Amendment;

FURTHER, IT IS ORDERED that

1. For the remainder of this lawsuit, petitioner must send respondents a copy of every paper or document that he files with the court. Once petitioner has learned what lawyer will be representing respondents, he should serve the lawyer directly rather than respondents. The court will disregard any documents submitted by petitioner unless petitioner shows on the court's copy that he has sent a copy to respondents or to respondents' attorney.

2. Petitioner should keep a copy of all documents for his own files. If petitioner does not have access to a photocopy machine, he may send out identical handwritten or typed copies of his documents.

3. The unpaid balance of petitioner's filing fee is $100; petitioner is obligated to pay this amount when he has the means to do so, as described in 28 U.S.C. § 1915(b)(2).

4. Pursuant to an informal service agreement between the Attorney General and this court, copies of petitioner's complaint and this order are being sent today to the Attorney General for service on respondents.