William **LEWIS**, Plaintiff,

v.

Derrick L. **OLLISON**, et al., Defendants.

No. CV 07–04238–R (VBK).

United States District Court, C.D. California, Western Division.

July 14, 2008.

Plaintiff in pro per, Ironwood State Prison, Blythe, CA.

Deputy Attorney General Leena M. Sheet, California Office of the Attorney General, Los Angeles, CA, for Defendants.

ORDER (1) ACCEPTING AND ADOPT-
ING THE AMENDED REPORT
AND RECOMMENDATION OF
THE UNITED STATES MAGIS-
TRATE JUDGE, AND (2) DISMISS-
ING THE COMPLAINT

MANUEL L. REAL, District Judge.

Pursuant to 28 U.S.C. § 636, the Court has reviewed the Complaint and all other papers along with the attached Amended Report and Recommendation of the United States Magistrate Judge, and has made *de novo* determination of the Amended Report and Recommendation.

**IT IS THEREFORE ORDERED** that a Judgment be entered (1) approving and adopting the Amended Report and Recommendation, and (2) directing that Judgment be entered dismissing the Complaint, and the action, with prejudice as to all Defendants.

AMENDED REPORT AND RECOM-
MENDATION OF UNITED STATES
MAGISTRATE JUDGE

VICTOR B. KENTON, United States Magistrate Judge.

This Amended Report and Recommendation is submitted to the Honorable Manuel L. Real, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05–07 of the United States District Court for the Central District of California.

On July 10, 2007, Plaintiff William Lewis, a state prisoner proceeding *pro se,* filed a civil rights action pursuant to 42 U.S.C. § 1983 after being granted leave to proceed without prepaying the filing fee. In his Complaint Plaintiff names four Defendants: (1) Derrick Ollison, Warden at Ironwood State Prison ("ISP"); (2) S. Ryan, Deputy Warden at ISP; (3) J. Harris, Associate Warden at ISP; and (4) M. Daniel, Associate Warden at ISP.[1] As relief the Complaint seeks money damages and declaratory and injunctive relief. (Complaint at 3–4, 6).

On July 19, 2007, the Court issued an Order directing service by the United

---

1. The Complaint also lists four unidentified "Does" whose involvement in the underlying events is unexplained. (Complaint at 4; Complaint attachment at 3).

States Marshal on Defendants Ollison, Ryan, Harris, and Daniel.

On September 28, 2007, Defendants Ollison, Ryan, Harris, and Daniel filed a motion to dismiss ("Defendants' Motion to Dismiss") with supporting memorandum ("Defendants' Memorandum") pursuant to Fed.R.Civ.P. 12(b)(6). On October 19, 2007, Plaintiff filed his opposition ("Plaintiff's Opposition"). On November 6, 2007, Defendants filed their reply ("Defendants' Reply"). A Report and Recommendation was filed on May 5, 2008. Plaintiff filed Objections to the Report and Recommendation on May 27, 2008. This Amended Report and Recommendation addresses Plaintiff's Objections.

Having reviewed the allegations in the Complaint, Defendants' Motion to Dismiss, Plaintiff's Opposition, Defendants' Reply and Plaintiff's Objections to the Report and Recommendation, the Court hereby recommends that Defendants' Motion to Dismiss be granted with prejudice as to all Defendants.

### BACKGROUND

The Complaint charges Defendants with violating Plaintiff's rights under the First Amendment and the Religious Land Use & Institutionalized Persons Act. (Complaint at 5, 5(a)). According to the Complaint and its attachments, Plaintiff is a practicing Muslim incarcerated at ISP. Islam directs Muslims to use scented oil five times per day during prayer. On July 20, 2006, a rule was implemented at ISP limiting inmates' purchase and possession of scented oils. Under the rule (CDCR Department Operations Manual ("DOM") Supplement § 53050.10) an inmate may possess no more than 12 ounces of scented oil in his cell, and may buy no more than 8 ounces of scented oil per purchase order. The rule was drafted after consultation with a Muslim imam. Plaintiff responded to implementation of the rule by filling out a "CDCR form 602," thereby initiating an action in the prison grievance system demanding permission to buy 32 ounces of scented oil per purchase order. Plaintiff's request was not granted. Plaintiff pursued administrative review of the CDCR form 602 grievance (log no. ISP–C–06–01267) without success. As part of this process a written "first level review" decision was issued by Defendant Daniel, and a written "second level review" decision was issued by Defendant Ryan. (Complaint at 2–3, 5; Complaint attachments at 3–5, A1–A12).

On July 27, 2006, ISP's "Facility C," where Plaintiff was housed, was on "lockdown" (or "modified program") status due to a disturbance not specifically identified by Plaintiff. During the lockdown inmates' movements and activities were restricted pursuant to the terms of a written "program status report" which dictated additional security measures. Among those measures was the requirement that inmates wishing to shower be escorted from their cells to the shower room and back wearing only boxer shorts and shower shoes. An inmate who was unwilling to comply with this clothing requirement, such as Plaintiff, was not permitted to shower that day. Although "Islam is a religion based on cleanliness," Plaintiff balked at complying with the clothing requirement because Islam directs Muslim men to exercise modesty by covering from others' gaze their "awrah" (the portion of the body from the navel to the knee). That same day Plaintiff filled out a CDCR form 602 demanding permission to go to and from the shower room wearing a shirt and pants. Plaintiff's request was not granted. Plaintiff subsequently exhausted the administrative review process regarding the CDCR form 602 grievance (log no. ISP–C–06–01418). As part of this process a written "first level review" decision was issued by Defendant Harris, and a written

"second level review" decision was issued by Defendants Ryan and Daniel. (Complaint at 3, 5(a); Complaint attachments at 3–5, B1–B14).

## DISCUSSION

### A. *Section 1983 Requirements.*

■■■ In order to state a claim under section 1983, a plaintiff must allege that: (1) the defendants were acting under color of state law at the time the complained of acts were committed; and (2) the defendants' conduct deprived plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Karim–Panahi v. Los Angeles Police Dept.,* 839 F.2d 621, 624 (9th Cir.1988); *Haygood v. Younger,* 769 F.2d 1350, 1354 (9th Cir.1985) (en banc), *cert. denied,* 478 U.S. 1020, 106 S.Ct. 3333, 92 L.Ed.2d 739 (1986). Liability under section 1983 is predicated upon an affirmative link or connection between the defendants' actions and the claimed deprivations. *See Rizzo v. Goode,* 423 U.S. 362, 372–73, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *May v. Enomoto,* 633 F.2d 164, 167 (9th Cir.1980); *Johnson v. Duffy,* 588 F.2d 740, 743 (9th Cir.1978).

1 A person deprives another of a constitutional right, where that person "does an affirmative act, participates in another's affirmative acts, or omits to perform an act which [that person] is legally required to do that causes the deprivation of which complaint is made." [citation] Indeed, the "requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." [citation]

*Hydrick v. Hunter,* 500 F.3d 978, 988 (9th Cir.2007) (quoting *Johnson v. Duffy,* 588 F.2d at 743–44).

### B. *First Amendment and RLUIPA.*

■■■ In this action Plaintiff asserts violations of his First Amendment right to free exercise of religion. To implicate the Free Exercise Clause of the First Amendment, a challenged prison regulation must burden an inmate's belief that is both sincerely held and rooted in religious belief. *Shakur v. Schriro,* 514 F.3d 878, 884–85 (9th Cir.2008). It is established that prison regulations that impinge on an inmate's constitutional rights will be upheld as valid if they are reasonably related to legitimate penological interests. *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987); *Bradley v. Hall,* 64 F.3d 1276, 1279 (9th Cir.1995). In evaluating the reasonableness of a challenged prison regulation a court will consider the following factors: whether the governmental objective underlying the regulation is legitimate and neutral, and whether the regulation is rationally related to that objective; whether alternative means of exercising the right remain available; the impact that an accommodation of the asserted right would have on guards, other inmates, and the allocation of prison resources; and the availability of ready alternatives. *Turner v. Safley,* 482 U.S. at 89–90, 107 S.Ct. 2254; *Shakur v. Schriro,* 514 F.3d at 884; *Bradley v. Hall,* 64 F.3d at 1279–80.

■■■ In this action Plaintiff also asserts violations of the Religious Land Use & Institutionalized Persons Act ("RLUIPA") (42 U.S.C. § 2000cc et seq.). The RLUIPA prohibits the government from imposing " 'a substantial burden on the religious exercise of a person residing in or confined to an institution,' unless the burden furthers 'a compelling governmental interest,' and does so by 'the least restrictive means.' " *Cutter v. Wilkinson,* 544 U.S. 709, 712, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005) (quoting 42 U.S.C. § 2000cc–1(a)). The RLUIPA is designed to "protect[ ]

institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." *Id.* at 721, 125 S.Ct. 2113. The text of the RLUIPA provides, in relevant part, as follows:

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in [42 U.S.C. § 1997], even if the burden results from a rule of general applicability, unless the government demonstrates that the imposition of the burden on that person

(1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc–1(a).

■■■ The RLUIPA defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc–5(7)(A). The Supreme Court has noted that "the 'exercise of religion' often involves not only belief and profession but the performance of … physical acts [such as] assembling with others for a worship service [or] participating in sacramental use of bread and wine." *Cutter v. Wilkinson,* 544 U.S. at 720, 125 S.Ct. 2113 (citation omitted). The Ninth Circuit has explained that a "substantial burden" on "religious exercise" must " 'impose a significantly great restriction or onus upon such exercise.' " *Warsoldier v. Woodford,* 418 F.3d 989, 995 (9th Cir.2005) (citation omitted). Also, a "substantial burden" occurs " 'where the state … denies [an important benefit] because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs.' " *Id.* (quoting *Thomas v. Review Bd. of Indiana Employment Sec. Div.,* 450

U.S. 707, 717–18, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981)).

■■■ Under the RLUIPA, a plaintiff bears the responsibility of making a prima facie showing that the challenged policy constitutes a substantial burden on the exercise of his religious beliefs. *Warsoldier v. Woodford,* 418 F.3d at 994. The defendant then bears the burden of showing that any substantial burden on the plaintiff's exercise of his religious beliefs is both "in furtherance of a compelling governmental interest" and the "least restrictive means of furthering that compelling governmental interest." *Id.* at 995. "Prison security is a compelling governmental interest." *Greene v. Solano County Jail,* 513 F.3d 982, 988 (9th Cir.2008). While prison administrators are entitled to deference with regard to prison security, to meet their burden to show "least restrictive means" they must demonstrate that they have " 'considered and rejected the efficacy of less restrictive measures before adopting the challenged practice.' " *Id.* at 889–90 (quoting *Warsoldier v. Woodford,* 418 F.3d at 999).

**C. *Motion to Dismiss.***

**1. *Standard.***

■■■ Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Bell Atlantic Corp. v. Twombly,* —— U.S. ——, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007); *Erickson v. Pardus,* —— U.S. ——, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007). Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail "to state a claim upon which relief can be

granted." Fed.R.Civ.P. 12(b)(6). To survive a motion to dismiss for failure to state a claim upon which relief can be granted, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. at 1965 (citations and quotations omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citations omitted). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 1969 (abrogating a literal reading of the oft-quoted statement in *Conley v. Gibson,* 355 U.S. at 45–46, 78 S.Ct. 99 ("a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief")). Dismissal is appropriate on a Rule 12(b)(6) motion if the facts alleged do not state a claim to relief that is "plausible on its face." *Id.* at 1974. Dismissal without leave to amend is appropriate when it is clear that the deficiencies in the complaint could not possibly be cured by amendment. *Jackson v. Carey,* 353 F.3d 750, 758 (9th Cir.2003). Pro se pleadings are liberally construed. *Ortez v. Washington County,* 88 F.3d 804, 807 (9th Cir.1996). Generally, review is limited to the contents of the complaint. *Clegg v. Cult Awareness Network,* 18 F.3d 752, 754 (9th Cir.1994). However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss. *Cooper v. Pickett,* 137 F.3d 616, 622 (9th Cir.1997). Also, a court may take judicial notice of "matters of public record" without converting a motion to dismiss into a motion for summary judgment. *Lee v. City of Los Angeles,* 250 F.3d 668, 689 (9th Cir.2001). Allegations of material fact in the complaint are taken as true and construed in the light most favorable to the nonmoving party. *Clegg v. Cult Awareness Network,* 18 F.3d at 754. "The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit. Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir.) (citations omitted), amended by 275 F.3d 1187 (2001). A plaintiff's civil rights claim can be "fatally undermined" by the attachments to his complaint. *Id.*

### 2. *Defendants Ryan, Harris, and Daniel.*

Defendants Ryan, Harris, and Daniel contend that dismissal of the action for failure to state a claim upon which relief can be granted is appropriate because their alleged involvement in the underlying events is limited to participation in the prison grievance appeals process. (Defendants' Motion to Dismiss at 2; Defendants' Memorandum at 13–15). In opposition Plaintiff reiterates allegations that Defendants were involved in the grievance appeals process, and also asserts that he otherwise "informed" Defendants of the alleged violations of his religious rights after those violations occurred. (Plaintiff's Opposition at 5–7).

The Complaint itself speaks in general terms and alleges no specific acts or omissions by these Defendants. (Complaint at 2–3, ¶¶ 4–7; 3–5(a).) Plaintiff acknowledges that the Complaint "does not expressly allege what actions were or were

not taken by Defendants." (Plaintiff's Opposition at 6). The Complaint attachments indicate that Deputy Warden Ryan, Associate Warden Harris, and Associate Warden Daniel are named as defendants because each participated in one of the levels of administrative review of Plaintiff's CDCR form 602 grievance concerning scented oil (log no. ISP–C–06–01267) and/or his CDCR form 602 grievance concerning shower clothing (log no. ISP–C–06–01418). (Complaint attachments at A5, A7–A8, B7–B8, B10–B11). Otherwise, the Complaint attachments describe these three individuals' activities without specificity: Deputy Warden Ryan was "responsible to some extent for the operation of [ ISP], and for the welfare of all the inmates"; and both Associate Warden Harris and Associate Warden Daniel were "somehow responsible for the operation of [ISP], and for the welfare of all the inmates." (Complaint attachments at 2–3).

 Participation in the prison grievance process does not give rise to a cause of action. *See Mann v. Adams,* 855 F.2d 639, 640 (9th Cir.), *cert. denied,* 488 U.S. 898, 109 S.Ct. 242, 102 L.Ed.2d 231 (1988). Through his Opposition Plaintiff has made clear that the fatal deficiency in the Complaint cannot possibly be cured by amendment. (Plaintiff's Opposition at 5–7). Accordingly, the Motion to Dismiss should be granted with prejudice as to Defendants Ryan, Harris, and Daniel.

### 3. *Defendant Ollison.*

 Defendant Warden Ollison contends that dismissal of the action for failure to state a claim upon which relief can be granted is appropriate because, as to him, Plaintiff "appears to be relying on an impermissible respondeat superior theory of liability." (Defendants' Motion to Dismiss at 2; Defendants' Memorandum at 13–14). The Complaint does speak in general terms, and alleges no specific acts or omissions by Warden Ollison. (Complaint at 3–5(a)). In opposition to the Motion to Dismiss, Plaintiff asserts that Defendant Ollison was personally responsible for the shower clothing program because he signed the "program status report" which dictated implementation of the objectionable security measure (clothing limited to boxer shorts and shower shoes). Plaintiff further asserts that he advised Defendant Ollison of the violation of his religious rights. Plaintiff acknowledges that his original Complaint "does not expressly allege what actions were or were not taken by Defendants," and requests an opportunity to file an amended complaint containing the allegation of personal involvement by Defendant Ollison. (Plaintiff's Opposition at 6–7).

The Court does not recommend that Plaintiff be given leave to amend with regard to Defendant Ollison. Viewed in the most liberal fashion, Plaintiff's assertion is that on July 27, 2006, due to heightened security measures instituted in the prison, he would have been required to walk through the building in boxers and shower shoes if he wished to shower. These facts fail to set forth a claim under RLUIPA, and they do not demonstrate an impingement of Plaintiff's First Amendment rights. As already noted by the Court, it is well established that under RLUIPA, the complained of practice must be a substantial burden on religious exercise; that is, Plaintiff must be denied an important benefit based on conduct mandated by his religious belief, which places substantial pressure on him to modify his behavior and to violate his belief system. (*See Warsoldier v. Woodford,* 418 F.3d at 995.) Here, Plaintiff has at most demonstrated that the temporary shower policy adopted by the prison due to security concerns created at most an inconvenience, but not a significant interference with his religious practice. Accepting Plaintiff's al-

legation that adherents to the Muslim religion must keep covered from others in a manner not permitted by the boxer and shower shoes policy, Plaintiff nevertheless fails to allege that he must, as a Muslim, shower once every day in order to practice his religion. Further, he was not forced to walk to the showers. If Plaintiff chose to forego a shower during periods of heightened security, this would merely demonstrate an inconvenience, which is not cognizable under either RLUIPA or the First Amendment. Furthermore, as Respondent suggests, if Plaintiff elects to forego a shower during periods of heightened security, he can cleanse himself in his cell sink. (*See Davenport v. De Robertis*, 844 F.2d 1310, 1316 (7th Cir.1988), *cert. denied, sub nom. Lane v. Davenport*, 488 U.S. 908, 109 S.Ct. 260, 102 L.Ed.2d 248 (1988).)

 The First Amendment does not prohibit a prisoner from being inconvenienced in practicing his faith so long as the penological practices do not prevent or prohibit the inmate from participating in the practice or mandates of his religion. *See Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir.1997). At best, Plaintiff's inability to walk outside of his cell to the shower area fully dressed does not and cannot amount to a prohibition on his ability to practice his religion.

 Finally, the policy instituted by Defendants of having inmates dress in boxers and shower shoes to pass to the shower area during temporary periods of heightened security, in order to avoid weapons concealment, is reasonably related to a legitimate penological interest in maintaining prison safety and security. Plaintiff cannot demonstrate that this poli-cy was motivated by bias against Muslims, as it is applicable to all inmates.

### 4. *The Prison Policy Limiting the Amount of Prayer Oil That an Inmate May Possess Does Not Violate Plaintiff's Rights Under RLUIPA.*

 In his Complaint (p. 4, ¶ 12), Plaintiff alleges that he is prevented from practicing his religion because the Defendants have "implemented a policy to limit or discontinue the purchase of religious prayer oil." As the Court has previously discussed, under RLUIPA, the Government may not impose substantial burdens on exercise of religion unless there is a compelling governmental interest, and the policy is the least restrictive means to satisfy the governmental interest. (*See* 42 U.S.C. § 2000cc (a)(1)(A)-(B).)

Here, the Court concludes that Plaintiff's rights to practice of his religion under RLUIPA are not subjected to a substantial burden because his custodial facility permits inmates to possess a sufficient amount of religious prayer oil. (*See* First Level Appeal Response to Plaintiff's Grievance, Log No. ISP–C–0601267 [attached as Ex. A to Complaint].)[2] As indicated in this document, purchase limits for prayer oil are set at eight ounces per order and 12 ounces at any one time in an inmate's possession. These limits were set in conjunction with consultation with an Imam, and are contained in DOM Supplement § 53050.10, Sacramental Wine and Religious Artifacts (*see* Ex. A, at p. 4). Further, Plaintiff admitted in his grievance form that he was allowed possession of prayer oil, although he averred that the

---

2. The Court has considered this attachment to the Complaint in ruling on the Motion to Dismiss, and may do so without converting the Motion to Dismiss into a Motion for Summary Judgment. *United States v. Ritchie*, 342 F.3d 903, 907–908 (9th Cir.2003) (citing *Van Buskirk v. CNN*, 284 F.3d 977, 980 (9th Cir. 2002)); *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir.1994).

eight-ounce quantity did not suffice to cover the demands of oil usage required in Islam. (Complaint at Ex. A., p. 3.) Clearly, therefore, there is no question that Plaintiff is incorrect in asserting that Defendants' policy "discontinued" the use of prayer oil. Further, that policy allows inmates to have 12 ounces of prayer oil in possession, in addition to purchasing eight ounces at any one time.

In *Perez v. Frank*, 433 F.Supp.2d 955 (W.D.Wis., 2006), the Court addressed numerous claims brought by an inmate who contended that prison policies violated his right to practice his religion, which was Islam. One of those claims concerned prayer oil. Plaintiff asserted that he had been forced to go without prayer oil for protracted periods of time as a result of the prison's policy. The Court noted that the current policy allowed Muslim inmates to purchase one one-ounce bottle of prayer oil from the chaplain each month, and in order to receive a new bottle, the inmates must first return their empty bottles to the chaplain. Thus, inmates may be left without prayer oil from the time each turns in his empty bottle until the time the chaplain provides him with a new bottle of oil. (*Id.* at 961.)

In addressing this particular issue, the District Court allowed the inmate to proceed on his claim that he was denied adequate access to prayer oil; however, the Court specifically held that a one-ounce bottle of prayer oil was an amount sufficient to last two weeks. Thus, the Court held that, "Therefore, to the extent that petitioner contends that respondents ... violated his rights by refusing to allow him to possess more than one ounce of prayer oil at a time, he fails to state a claim." (*Id.* at 964.)

Here, the prison policy, as noted, allows purchase of eight ounces at a time, with up to 12 ounces in possession.

In another similar, case, the Court held that a limitation to inmates possessing one one-ounce bottle of prayer oil every three months was sufficient. *See Ahmad v. Department of Correction*, 446 Mass. 479, 845 N.E.2d 289 (Mass.2006).

The Court concludes that the prison policy restricting possession of prayer oil to 12 ounces does not place a substantial burden upon Plaintiff's ability to practice his religion, and, that it serves a compelling governmental interest and is the least restrictive means to advance that interest. The ability to practice religion does not equate to an inability on the part of prison personnel to implement reasonable regulations which do not impinge upon the practice of that religion. *See Cutter v. Wilkinson*, 544 U.S. 709, 722–723, 125 S.Ct. 2113, 2123–2124, 161 L.Ed.2d 1020 (2005). As the Court noted in *Cutter*,

> "Should inmate requests for religious accommodations become excessive, impose unjustified burdens on other institutionalized persons, or jeopardize the effective functioning of an institution, the facility would be free to resist the imposition. In that event, adjudication in as-applied challenges would be in order."

(*Id.* at 726, 125 S.Ct. 2113.)

Here, controlling the nature and extent of possession of inmate property by such regulations as are at issue here concerning possession of prayer oil is related to the institution's interest in preventing conduct (such as theft, bartering, gambling, hiding of contraband, etc.) which may be a threat to the security of the institution.

For the foregoing reasons, Plaintiff's allegations fail to state a claim under RLUIPA. Further, this policy does not violate Plaintiff's First Amendment rights to practice his religion. In order to dem-

onstrate a First Amendment violation, Plaintiff must demonstrate that the Defendants burdened the practice of his religion by preventing him from engaging in conduct which is mandated by his religion without any justification which is reasonably related to legitimate penological interests. *See Freeman v. Arpaio,* 125 F.3d 732, 736 (9th Cir.1997) (citing *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987)).

In reviewing Plaintiff's allegations, the Court deems that, even when they are viewed in a light most favorable to Plaintiff, they are insufficient to meet the requirements of a First Amendment violation. Plaintiff concedes that he, as an Islam inmate, is allowed to have religious prayer oil. Indeed, as noted, he may possess up to 12 ounces of prayer oil at a time, and may reorder up to 8 ounces at any one time. It is inconceivable that Plaintiff can demonstrate a burden upon his religious activities based on such a policy. Further, as previously noted, the restriction on quantity of prayer oil which may be possessed is reasonably related to legitimate penological interests to maintain safety and security in the institutional setting.

Plaintiff has failed to state a First Amendment claim.

For the foregoing reasons, the Complaint should be dismissed with prejudice.

### RECOMMENDATION

**IT THEREFORE IS RECOMMENDED** that the District Court issue an Order: (1) approving and adopting this Amended Report and Recommendation; and (2) directing that Judgment be entered dismissing this action with prejudice as to all Defendants.